### ROBINSON *v.* THE STATE.

1. Persons orally " deputized " by the sheriff to assist him in making an arrest for felony are neither officers nor mere private persons whilst co-operating with the sheriff and acting under his orders, but their legal position is that of a *posse comitatus*.

2. A person summoned by the sheriff to act as one of a *posse* to aid in the execution of a warrant for felony in the sheriff's hands, is protected in any lawful act done by him to promote or accomplish the arrest of the accused person, to the same extent as he would be were he himself an officer having personal custody of the warrant and charged with its execution. And in order for him to have this protection, it is not necessary that he should be and remain in the actual presence of the sheriff, but if the two are in the same neighborhood and acting in concert, the sheriff giving orders and the other obeying them, either literally or according to their general spirit and purpose, with a view to effect the arrest in pursuance of the common design, it is sufficient.

3. One other than a known officer who makes an arrest for felony without having the warrant in his own possession, ought to make it known on demand that the warrant exists, where it is, and that he claims to be acting under its authority or by command of the officer who has it in possession ; but the omission to do so will not justify the party arrested, or sought to be arrested, in resisting the arrest if he in fact already knows, or on reasonable and probable grounds believes, that he is under a charge of felony, that a

warrant is out for his arrest, and that the arrest attempted is really in consequence of the warrant and in execution of the same. If, however, the demand for authority be made under real ignorance of these things and in good faith for the purpose of eliciting information actually wanted and needed, failure to comply with the demand would justify resistance to any reasonable and proper extent; and even if carried so far as the slaying of the person endeavoring to make the arrest, the homicide might amount to manslaughter only; or, if such person made the first demonstration with a deadly weapon, the killing might be justifiable homicide.

4. The court, in its charge, having made the case turn chiefly on the right and power of the deceased to make the arrest, irrespective of the manner in which the power was executed and of the failure of the deceased to respond fully to the demand made upon him for his authority, and without reference to the good or bad faith with which that demand was made, the charge was erroneous, and the accused is entitled to a new trial.

December 18, 1893.

Indictment for murder. Before Judge MILNER. Whitfield superior court. October term, 1893.

George Robinson was convicted of the murder of Russell Powell, and his motion for a new trial was over-ruled. The following appears from the evidence: On July 24, 1893, a warrant was issued for the arrest of the defendant, by a justice of the peace of Floyd county, upon the affidavit of Sam. P. Maddox, charging that on the 22d of that month the defendant committed the offence of assault with intent to murder in Floyd county, by shooting at Joe Brown and other persons unknown. Maddox testified that his information was, that defendant had emptied his pistol into a passenger-train on which were passengers, of which the conductor was J. E. Brown, who was looking at defendant. The warrant was put into the hands of the sheriff of Whitfield county, to be executed. He deputized Powell and Crow to go with him and Burnett to make the arrest, informing them that he had the warrant and of the crime with which defendant was charged. It had been ascertained that defendant was at the house of his brother James, in

Whitfield county.   The arresting party went to a point about half a mile from the house, where the sheriff and Burnett remained, the sheriff telling Powell and Crow to go and arrest the defendant and bring him back to that point; that defendant would run if he saw the sheriff coming.   The two named went to the house and found defendant in company with half a dozen others, including his brother and other relatives.   Fearing to attempt the arrest on account of the size of the crowd present, Powell and Crow returned and told the sheriff, and he directed them to go to a point beyond and near the house, conceal themselves, and await the coming of Burnett and the sheriff, who would come and make the arrest; but that if the defendant went to leave, Powell and Crow were to arrest him.   It was further understood that Powell and Crow were to go to a place near the house, where liquor was sold, and get some whisky to keep down suspicion.   The sheriff was to come in half an hour, and if defendant attempted to escape they would thus have him surrounded.   The sheriff kept the warrant, and Powell and Crow again went to the house. The Robinsons and others present were at the well in the yard.   Powell went in, got water and handed it over the fence to Crow, who then went off.   Some one at the front gate called the defendant, one witness testifying that Powell called him, and other evidence tending to show that it was George Johnson who called. Defendant picked up a shot-gun and went out, the testimony in his behalf being that he was about to go hunting in accordance with a previous arrangement. He said to Johnson, "All right; hold on till I get my gun." He started up the road, and Powell grasped him by the right arm and said, " I am deputized to arrest you." Defendant said, " Show your authority," and Powell replied, " It don't make any difference; I have got to take you."   Defendant had his shot-gun in his left hand, and

called to his brother to come and take it, saying as he handed it over the fence, " Jim," or, according to some testimony, " Gentlemen, don't let them take me." He was pulling Powell back to the fence. Powell said, " Jim, I have got to take him." A witness for the State testified that just as defendant called Jim to take the gun he said to Powell, " I ain't going to be arrested," and Powell replied, " O yes, I reckon you are." Powell had his pistol in his hand, and according to the testimony for the defendant, had it pointed towards defendant's breast; while a witness for the State testified that " it was pointing sorter in front; it wasn't right at Robinson; it pointed rather in front of him." The evidence for the State is, that as soon as defendant put the gun into his brother's hand, he pulled a pistol from his pantaloons pocket with his left hand and fired the first shot at Powell, the bullet grazing the top of Powell's head; thereupon Powell fired the second shot, giving defendant a flesh wound in the arm; and then the defendant changed his pistol to the other hand and fired two more shots, one of which went into Powell's head and killed him. The evidence for defendant is, that the first shot was fired by Powell as soon as defendant released the gun into his brother's hand, and while defendant's hands were down by his side; and that defendant changed his pistol from his left to his right hand after being shot by Powell, who continued to point his pistol at defendant, holding it with both hands and trying to fire it again, but it would not revolve sufficiently. After the shooting the defendant returned to the well where his wound was bandaged. He said, " He shot me first, or I wouldn't have shot him; he shot me all to pieces"; and made the further remark that " none of that G— d—d station crowd could run over him," or " arrest him"; the witness could not remember which. James Robinson told defendant to go away; and he was

gone when the sheriff arrived, a few minutes later. That officer testified that the half-hour was just out when he heard the firing; he and Burnett were just about to drive to the place in a buggy, and they drove as fast as the horse could trot. The sheriff could not find defendant then; finally arrested him at a place in Tennessee, 160 miles away. Defendant and three or four others tried to break jail a few days before the trial.

The motion for new trial alleges, in the first ground, that the verdict was contrary to law and evidence. The next five grounds are, that the court erred in charging the jury thus: (2) " The deceased Powell, if you find he was so deputized, had the right, and it was his duty, to arrest the defendant, whether he had the warrant personally in his hands or not, or whether the sheriff was in his company or present at the time of the arrest or not." (3) "If you find that Powell did endeavor to arrest the defendant, and notified him at the time that he had been deputized by the sheriff for that purpose, it was the duty of the defendant quietly to submit to the arrest; and if he resisted, Powell had the right to use just such means and force as was necessary to compel him to submit to the arrest, and the defendant could not justify any act of resistance against the effort of Powell to arrest him or hold him in arrest, on the ground of self-defence." (4) "If you find from the evidence that the deceased had no authority to arrest the defendant or was not deputized by the sheriff for that purpose, then unless Powell knew that defendant had committed a crime and was endeavoring to escape, he would have no right to use means and force to make the arrest; and in resisting, the defendant could justify on the grounds of self-defence." (5) " Look to the evidence as to whether the warrant was in the sheriff's hands at the time he deputized Powell (if you find that he was deputized), and if you so find, then

v 93-6

Powell was fully empowered to arrest the defendant and it was his duty to do so, whether he had the warrant in his possession or not, or whether the sheriff was with him at the time and place of the arrest or attempted arrest. The other material grounds are, that the court erred in refusing to give in charge the following instructions as requested: (6) "A private person may arrest if he sees a felony committed in his presence or knowledge, or if the offence is a felony and the offender is escaping or attempting to escape." (7) "A special deputy or private person is bound to show his warrant and authority, or the arrest is illegal." (8) "The sheriff cannot delegate his authority to a private citizen to arrest in his absence." (9) "Private persons at common law cannot arrest for crime less than felony." (10) "A person may resist an unlawful arrest, and, if necessary, kill the person attempting to arrest him." (11) "A private person attempting an arrest should exercise all due caution and circumspection, and must follow the law in having and executing his authority." (12) "Private persons cannot apprehend on reasonable grounds of suspicion, except in cases of felony when the person is escaping." (13) "If an officer with a warrant summon private citizens to aid him in making an arrest, they are bound to obey; but he cannot legally require them to go a distance of one half-mile and make an arrest when he is neither actually nor constructively present." (14) "If it were legal for him to send forward private persons to make an arrest, and they fail to do it and return and make their report to him, and he gives them other instructions which they do not obey, but in violation thereof seek to arrest the party in his absence, they are not protected; they are only protected while obeying instructions; they are not protected if they are violating the sheriff"s orders and making an arrest he did not then and there authorize them to make." (15)

"A person illegally arrested may oppose force to force, and use force enough to prevent an invasion of his liberty; and if he has reasonable grounds to believe his life is in danger, or that he is in danger of great bodily harm, he may kill the person making the attempt and will be justified in so doing."

W. K. MOORE, for plaintiff in error.

J. M. TERRELL, attorney-general, and A. W. FITE, solicitor-general, *contra*.

LUMPKIN, Justice.

1. Where it is the duty of a sheriff to arrest one charged with a felony, we know of no law which authorizes this officer to "deputize" a private citizen either to make or assist in making the arrest, and thus constitute the person so "deputized" an officer. Under section 4722 of the code, every officer charged with the execution of a penal warrant has the authority to summon to his assistance, either in writing or verbally, any citizen of the county. When citizens are thus summoned by the sheriff, they are, while co-operating with him and acting under his orders, not themselves officers, nor are they mere private persons, but their true legal position is that of a *posse comitatus*. A *posse* may be summoned under the form of "deputizing" the person or persons composing it. The mode is immaterial, so that the object be to require or command assistance.

2. A member of a *posse comitatus,* summoned by the sheriff to aid in the execution of a warrant for felony in the sheriff's hands, is entitled to the same protection in the discharge of his duties as the sheriff himself; and to this end, a person so summoned may do any act to promote or accomplish the arrest which he could lawfully do were he himself the sheriff, having personal custody of the warrant and bound to execute the same. See 13 Criminal Law Magazine, §30, p. 198. In order

to have the benefit of this protection, it is not essential for a member of the sheriff's *posse* to be and remain in the actual physical presence of the sheriff. It is sufficient if the two are in the same neighborhood, actually endeavoring to make the arrest and acting in concert with a view to effect this, their common design.

The evidence in the present case shows that the deceased, Powell, had been summoned by the sheriff to aid him in making the arrest of Robinson, under a warrant charging the latter with felony. It is quite likely that the sheriff supposed that by "deputizing" Powell, he had, in a sense, been made an officer for this purpose. If the sheriff really entertained this idea, he was, as already stated, mistaken. Be this as it may, however, the sheriff was near the scene where it was expected the arrest would take place, and had given orders to Powell, obedience to which would tend to accomplish the arrest. Powell was obeying these orders, not literally, it is true, but certainly according to their general spirit, and the variance by Powell from the precise instructions given him by the sheriff was evidently necessitated by a change in the movements of the accused which had not been anticipated. Under these circumstances, we hold that the conduct of Powell was substantially in obedience to the sheriff's orders, keeping in view the real object of their presence in the vicinity, which was undoubtedly the arrest of Robinson.

It was seriously contended by counsel for the plaintiff in error, that as the sheriff was not in sight when Powell laid his hand on Robinson to prevent his leaving the house of his brother, and as the warrant was not then in Powell's possession, the attempted arrest was unauthorized and illegal. The law applicable to this contention is thus aptly stated by Mr. Bishop in the first volume of his work on Criminal Procedure, §186: "To justify the private person who thus assists the officer, the latter

must be in some sense present commanding him. There is no precise distance which the two may be apart; but, where a sheriff is endeavoring to make an arrest, or preserve the peace, and he has called in others to help him, he is, though absent from the particular place occupied by them, to be deemed constructively present, within this rule, if his absence is in furtherance of the common design." The text of this distinguished author is admirably supported by the case of Coyles v. Hurtin, 10 Johns. 85, as will appear from the following extract from the opinion of Chief Justice Kent: " The sheriff is *quodam modo*, present by his authority, if he be actually engaged in efforts to arrest, *dum fervet opus*, and has commanded and is continuing to command and procure assistance. When he is calling upon the power of the county, or a requisite portion of it, to enable him to overcome resistance, it would be impossible that he should be actually present in every place where power might be wanting. The law is not so unreasonable as to require the officer to be an eye or ear witness of what passes, and to render all his authority null and void except when he is so present. He could not, upon that construction, use the power of the county with effect, and it would be attended with great inconvenience and danger to the administration of justice. The question in these cases does not turn upon the fact of distance, so long as the sheriff is within his county, and is *bona fide* and strictly engaged in the business of the arrest." In this connection see, also, Com. v. Field, 13 Mass. 321, cited by Mr. Bishop. There is an obvious distinction between the officer's calling one to his assistance, and merely attempting to delegate his authority and accomplish the arrest through the agency of third persons acting alone, as in the case of Rex v. Patience, 7 Car. & P. 775, where a constable, without attempting himself to execute a warrant in his hands, *employed* his two sons to make the arrest. In

Kirbie *v.* State, 5 Tex. App. 60, it was held that persons called upon by an officer holding a warrant to assist in the arrest of a party charged with crime, were protected, whether they had the warrant at the time of the attempted arrest or not.

Under the facts as disclosed by the record now before us, we think the sheriff was at least constructively present when Powell was attempting to arrest Robinson, although the officer was not in sight at that time. He was using Powell to accomplish the arrest, just as though he had reached out his own arm, supposing it was physically possible for him to do so, over the entire distance, and had taken hold of the person of Robinson himself. Powell was really a mere physical agency employed by the sheriff, by means of which the officer was enabled to extend his presence to the scene of action. It was undoubtedly the right of the sheriff to do this, he, of course, being responsible for the consequences of Powell's acts so long as the latter conformed literally or substantially to the sheriff's orders. A sheriff on foot might be unable to overtake a fleeing prisoner who could run faster than the officer; but if he shouted to a bystander to seize the fugitive, and this was done, it would be a seizure by the sheriff, and this, we think, would be undoubtedly true even though the fugitive ran out of the sheriff's sight before the bystander succeeded in overtaking and catching the escaping prisoner. The case before us is, in principle, within the class covered by this illustration.

There is nothing in the case of *Croom* v. *State*, 85 *Ga.* 718, contrary to what is here ruled. A warrant for the arrest of Croom was in the hands of the marshal of Ty Ty, who, without delivering it to Hamlin, a bailiff, showed it to him and told him if he would arrest Croom, he (the marshal) would divide with Hamlin a reward of twenty-five dollars which the former had been offered

for making the arrest. Hamlin, without the warrant and on his own account, went with a *posse* summoned by himself to the house of Croom's father, and was there killed by Croom. Under these circumstances, Chief Justice BLECKLEY very properly said, on page 722: "The warrant not being in the hands of Hamlin, but in the possession of the marshal of Ty Ty, who was not present, was no authority to Hamlin to make an arrest." Hamlin was in no sense acting as one of a *posse* summoned by the marshal. Indeed, the latter had nothing whatever to do with the attempted arrest, either in its inauguration, or in the method adopted for its execution. Croom's case, therefore, is similar to that of Rex *v.* Patience, *supra*, and Hamlin did not bring himself within the rule as stated in Whart. on Homicide, §242, "that the warrant must be executed by the party named in it, or by some one assisting such party, either actually or constructively," nor within the principle of Codd *v.* Cabe, 13 Cox Cr. Cas. 202.

There is also a distinction between the authority of an officer to arrest without a warrant in cases of felony and of misdemeanor. Thus it has been said that " he may arrest any one of whom he has a reasonable suspicion that he has committed a felony, without waiting first to procure a warrant "; but without first procuring such warrant, "he may not arrest one who has committed . . . a misdemeanor out of his presence." See 13 Cr. Law Mag. pp. 177–78, and cases cited. On the same line is the case of Drennan *v.* People, 10 Mich. 169, in which it was held that a constable, having knowledge that a warant had been issued for the arrest of a person charged with felony, could lawfully make the arrest without having the warrant in his possession. This case will also be referred to in connection with the question discussed in the next division of this opinion.

We are fully convinced that the rule announced in

the second head-note is both sound in principle, and well supported by authority.

3. It appears that when Powell grasped Robinson by his right arm, the former said, " I am deputized to arrest you," to which Robinson replied, " Show your authority," and the answer which Powell made to this demand was, " It don't make any difference ; I have got to take you." Under these circumstances, we think it was the duty of Powell to have informed Robinson of the existence of the warrant in the sheriff's hands, and also that he (Powell) was attempting to make the arrest under authority of this warrant, or at least, that he had been commanded by the sheriff to do so. As a general rule, a known officer, in making an arrest, is not bound to exhibit his authority. Certainly he is not absolutely required to do so before the accused person has submitted to the arrest, but after submission the officer ought to make known the substance of the warrant and for what cause and whence it issued. Where, however, one not a known officer is specially summoned to make an arrest, he ought, unless prevented by the conduct of the accused from so doing, to show the warrant upon demand ; or, if it is not in his possession, it is his duty to state the authority under which he is acting. State *v.* Curtis, 1 Haywood (N. C.), 471 ; 1 Bish. Cr. Proced. §191 ; Murfree on Sheriffs, §§152–3. Accordingly, it was said in Drennan's case, *supra*, that a constable attempting to make an arrest for a felony without having the warrant in his possession ought to inform the person arrested of the facts, or at least, of the offence for which he was apprehended. In this connection, see, also, 13 Cr. Law Mag. 343.

Assuming, however, as sound law, that it is the duty of one who has been summoned by an officer to assist in making an arrest for a felony to explain to the person sought to be arrested the cause for which his appre-

hension is attempted, and the nature of the process under which the arresting party assumes the authority to act, the omission to perform this duty will not necessarily justify the person sought to be arrested in resisting the attempted arrest. If he in fact already knows, or on reasonable and probable grounds believes, that he is under a charge of felony, that a warrant has been issued for his arrest, and that the arrest attempted is really in consequence of the warrant and in execution of the same, he ought to submit peaceably to the arrest. If he refuses to do so, under such circumstances, his resistance will be at his peril. " One who is guilty of a felony has no right to kill one who pursues him, if he has notice of the object of the pursuit, whether the pursuer be an officer or a private person, or whether he be with or without a warrant." Kerr on Hom. §189. See, also, the cases cited under this section. This doctrine is in complete harmony with that announced by this court in *Snelling* v. *State*, 87 *Ga.* 50, where it appeared that the accused killed one who was attempting to arrest him for a felony for which he had been indicted three years, the deceased being in fact an officer, though he did not disclose his character as such or exhibit or mention the warrant under which he was acting. It was accordingly held in that case that, the circumstances showing the accused, who was a fugitive from justice, must have apprehended the arrest and realized the intention of the arresting party, the killing was murder. It was manifest that the accused was not in good faith resisting an attack which he had any right, under the circumstances, to believe was a mere unauthorized assault, it further appearing that before he fired the fatal shot, the deceased had said to him, "Consider yourself under arrest." The same principle controlled the case of *Ramsey* v. *State*, 92 *Ga.* 53, 17 S. E. Rep. 614, in which it distinctly appeared that the accused knew the official character of the po-

liceman attempting his arrest, and also, that this police-
man had been summoned by the wife of the accused to
arrest the latter for beating her, and the officer plainly
and distinctly announced his purpose to make the arrest
for this breach of the peace, which had just taken place
in his presence or hearing.

If the demand made by Robinson for Powell's au-
thority was a mere pretense, and he really knew, or
ought to have known, why Powell was attempting to
apprehend him, he had no right whatever to resist the
arrest, and his conduct in so doing was totally unau-
thorized and unlawful. If, however, the demand for
authority was made in good faith and under real igno-
rance of the facts, for the purpose of eliciting informa-
tion actually wanted and needed, resistance by Robinson
to any reasonable and proper extent, upon the failure of
Powell to comply with this demand, would have been
justifiable; and even the slaying of Powell might, under
these circumstances, have been manslaughter only. It
has been said that " unless the slayer knows the official
character of the deceased, the homicide is only man-
slaughter, where committed without deliberation"; but
" if the killing was clearly malicious and premeditated,
the fact that the officer was acting under a void process
is no mitigation or excuse. The same is true if the de-
fendant had knowledge that the intended arrest was one
which the officer had a right to make without a war-
rant." Kerr on Hom. §98. The following is a correct
and concise statement of the law applicable in such
cases: " Notice of the official character of the officer to
the person charged with killing him is a material ques-
tion in all these inquiries. This notice may be express
or implied. If there is no notification, either express or
implied, by which we may say if the prisoner has no in-
formation of the officer's powers and intentions, of the
character in which the person is acting, the killing will

be manslaughter only; otherwise it will be murder." 13 Cr. Law Mag. §57, p. 516, citing cases.

If Robinson was acting in perfect good faith in making the demand and resisting the arrest, honestly believing Powell was making a totally unauthorized assault upon him; and if Powell made the first demonstration with a deadly weapon, and thus put Robinson in danger of life or limb, the killing by Robinson might have been altogether justifiable. Of course, we do not mean to express, or even intimate, what the real truth was. The killing of Powell by the accused presents a case of murder, voluntary manslaughter, or justifiable homicide, according to the facts as they may be found by the jury in the light of the principles announced in this opinion.

4. Taking into view the charges of the court complained of and the refusals to charge, in connection with the entire charge of the court as sent up in the record, it is quite clear that the case was made to turn chiefly on the right and power of the deceased to make the arrest, irrespective of the manner in which that power was exercised and of the failure of the deceased to respond fully to the demand made upon him for his authority, and without reference to the good or bad faith with which that demand was made. The case, therefore, was not properly submitted to the jury, and there should be a new trial. While it is true that the court read to the jury the sections of the code defining voluntary manslaughter and justifiable homicide, he did not give appropriate instructions for applying either of these sections in conformity to the principles which ought, in view of the issues of fact involved, to have controlled the determination of the case.

Some other questions were made in the motion for a new trial; but as they cannot possibly arise upon the next hearing, they require no notice at our hands.

*Judgment reversed.*