BLACKMAN ET AL., APPELLANTS, *v.* CITY OF CINCINNATI, APPELLEE.

(Decided February 10, 1940.)

*Messrs. Harmon, Colston, Goldsmith & Hoadly* and *Mr. Harold K. Goldstein,* for appellants.

*Mr. John D. Ellis,* city solicitor, and *Mr. John J. Dreyer,* for appellee.

MATTHEWS, J.   This is an appeal from a judgment of the Court of Common Pleas of Hamilton county, affirming a judgment of the Municipal Court of Cincinnati in favor of that city.

One Shearer, a police officer of the city, while on duty, saw some men in an automobile shoot at persons in an adjoining park, and then start to flee. The plaintiff, Blackman, was passing in an automobile at the time and stopped to avoid a collision with the automobile of the law violators. The policeman, with gun in hand, ran to plaintiff's automobile, and asked or commanded the plaintiff, Blackman, to pursue the automobile, and he did so. The policeman got in the

plaintiff-Blackman's automobile, and occupied one of the front seats, but it does not appear that he gave any specific directions as to the manner of operating it. The fleeing law violators were not overtaken, but in the pursuit Blackman's automobile, which was being operated by him, collided with a truck and was damaged.

Blackman carried collision insurance on his automobile with his coplaintiff. He presented his claim to it, and was paid the amount of the damage less $50, which the policy provided should be assumed by him. The amount he received was $175. The plaintiff Blackman delivered the automobile to a garageman for repairs and used the money to pay the charge for repairs. The automobile was never out of his possession except when in the possession of the repairman, unless it can be said that it was in the possession of the police officer while he was riding in it.

The insurance policy provided that the insurer should be subrogated to the rights of the insured against third persons. That is the reason for its joinder as coplaintiff.

The plaintiffs alleged in their amended bill of particulars that the plaintiff, Blackman, "surrendered his said automobile to the use and direction of said police officer and in accordance with the orders of said police officer pursued the said criminals." The prayer of the bill was for the difference between the value of the automobile immediately before and after the collision.

The plaintiffs concede that a police officer in preserving the peace and in arresting persons charged with crime is acting in a governmental capacity, and that no cause of action on account of acts done by such officer while so acting arises against the state or political subdivision by reason thereof, with the one exception of a taking of property.

But, as to that exception, they say that under both

the state and federal Constitutions whenever private property is taken for a public purpose, the public must pay therefor, and that when it is so taken, the public is always acting in a governmental capacity; that that is the only justification for the taking, and that the demand for just compensation for such taking is not defeated, but justified by that fact. All that is clear. The Ohio Constitution, Section 19 of Article I, expressly provides that when private property is taken for a public purpose, just compensation must be made therefor, and, a taking by the state without making compensation would also violate the "due process clause" of the Fourteenth Amendment of the United States Constitution.

It has been held that when private property is taken by the public without consent and without judicial process, a promise is implied that the public will pay therefor and that a recovery on that theory will be awarded. *United States* v. *Lynah,* 188 U. S., 445, 47 L. Ed., 539, 23 S. Ct., 349. We do not regard the form of the remedy as material. It is, we believe, sufficient to say that if there is a taking for a public purpose within the meaning of the law, a continuing obligation to pay is imposed by the Constitution until it is discharged by payment. The constitutional right to compensation cannot be defeated by the informality of the taking. If the defendant is obliged, its obligation can be enforced in this action.

The defendant's position is, that the circumstances show that there was no taking, and, also, that assuming such a taking by a police officer, the duty to make compensation would rest upon the state, and not upon the municipality.

So that the first proposition that confronts the court is, whether there has been a taking.

Now what are the facts? The officer was engaged in attempting to make an arrest. The person whom he was attempting to arrest was fleeing in an automo-

bile. The officer was on foot. An emergency existed. He needed assistance. The plaintiff, Blackman, was there in an automobile. The officer ordered him to assist by pursuing the fleeing person, in the hope of overtaking and arresting him. The plaintiff complied and joined in the effort to make the arrest. In doing so, he used his automobile. Was this an exercise of the power of eminent domain over the automobile? Or was it the exercise of the police power over its owner? Certainly, it has none of the *indicia* of the exercise of the power of eminent domain. The officer was clothed with police power, but not with the power of eminent domain. From earliest times, an officer charged with the duty of preserving the peace and arresting offenders has had the authority to call upon bystanders to assist him in so doing. *Robinson* v. *State*, 93 Ga., 77, 44 Am. St. Rep., 127, and annotation; *McMahan* v. *Green*, 34 Vt., 69. The officer always had the right to call to his aid the *posse comitatus*. Bouvier's Law Dictionary (Rawles 3 Ed.), 2634. It was one of the *trinoda necessitas* at common law. On call, it was the citizen who was obliged to report armed, apparelled, and with horse. Maitland Constitutional History of England, 276; 8 University of Kansas City Law Review, 164. Hue and cry, watch and ward and *posse comitatus* were closely related, and were all a part of the one duty to help defend the realm. In 6 Corpus Juris Secundum, 616, it is said:

"A peace officer has the right to summon and require the assistance of as many bystanders as may be necessary to enable him to perform his duty in making an arrest."

And at page 617:

"When a known officer summons a bystander for the purpose of assisting him in making an arrest, the bystander is bound to respond."

This right and this duty exist only in cases of emergency. In such an emergency, the duty rests upon all

to assist. The officer may call upon the whole community under such circumstances.

This common-law obligation of citizens is a part of the statute law of this state. By Section 12857, General Code, it is enacted that:

"Whoever, when called upon by a sheriff, coroner, constable or other ministerial officer to assist in apprehending a person charged with, or convicted of, a criminal offense, or in securing such person when so apprehended, or in conveying him to prison, neglects or refuses so to do, shall be fined not more than fifty dollars."

We hold that both the plaintiff Blackman and the officer were engaged in the exercise of the police power under this statute, and that no other power of government was involved. When called upon by the officer who was attempting to make an arrest, it was the duty of Blackman to assist in all reasonable ways with whatever facilities were available. The temporary use of his automobile for this purpose was incidental to his duty to lend whatever assistance was within his power. Concededly, there was no divestiture of title. Nor was there any interruption to his possession. If the officer had not ridden in the automobile, there would clearly have been no change in the possession of the automobile. The fact that he did ride in it is immaterial. Blackman still had possession of it. The use of the automobile resulted from authority over the owner and not from any assertion of title over his property.

We hold that the public acquired no title of any sort to this automobile, and, that, therefore, there was no taking of property within the meaning of the constitutional provisions. It was a temporary interference incidental to the exercise of the primary purpose of government to preserve the peace and punish disturbers thereof—and not a taking.

The appellee relies on *Aldrich* v. *City of Youngs-*

*town,* 106 Ohio St., 342, 140 N. E., 164, and other cases, as holding that a police officer, although appointed and paid by a municipality, is, nevertheless, an officer of the state while enforcing state laws. As the discharging of firearms within the municipality is a violation of a municipal ordinance as well as a state law, we do not consider that line of cases applicable to this situation.

For these reasons, the judgment is affirmed.

*Judgment affirmed.*

HAMILTON, P. J., and ROSS, J., concur.