**STATE of Missouri, Respondent,**

v.

**Carroll Eugene GOODMAN and Ronald James Phillips, Appellants.**

**No. 54613.**

Supreme Court of Missouri, Division No. 1.

Feb. 9, 1970.

John C. Danforth, Atty. Gen., Jefferson City, Charles A. Blackmar, Asst. Atty. Gen., for respondent.

Robert G. Duncan, Pierce, Duncan & Hill, and Michael Drape, Kansas City, for appellants.

REX TITUS, Special Judge.

A jury found Carroll Eugene Goodman and Ronald James Phillips guilty of burglarizing and stealing from the Gassman Hardware Store in Lathrop, Missouri. Following denial of their post-trial motions and in accordance with the verdicts, each defendant was sentenced to a term of seven years for burglary and an additional consecutive term of three years for stealing. Through their pretrial motion to suppress and continuing complaints defendants, have well preserved their objections to the involved searches and seizures which produced from their persons the evidence which linked them to the subject felonies. The defendants will be discharged.

Suspicions of the night telephone operator in Lathrop (a city of 1,000 population) were aroused at 2:25 a. m. August 16, 1968, when "the voice of the boy or man" she did not recognize initiated a call from the Gassman store to Kansas City. The operator contacted Mr. Gassman at his home concerning the propriety of the call and he "asked her if at all possible to keep them on the line, [but] when they answered in Kansas City * * * the fellow * * * on the Gassman [store] line hung up." When Gassman, the county sheriff and a highway patrolman inspected the store premises at about 2:45 a. m. they found it uninhabited; the backdoor had been forcibly opened, and a torn dollar bill and "between eighteen to twenty-five dollars" in "nickels, dimes, quarters [and] pennies" had been removed from the cash register. No one had been seen entering or leaving the store. The sheriff possessed no inkling of the identity of the person who made the telephone call and had "no way to tell how many" people were involved. In his own words, "I didn't know who I was looking for." The sheriff told a newspaper deliveryman that "if you see anybody or anything unusual [to] let me know," and instructed the city marshal of Lathrop that "if he saw any strangers to bring them [in] regardless of who they were."

At about 3:15 a. m. the newspaper carrier saw two people "normally walking" on the berm of a public highway at a point four miles south of Lathrop. He did not know "whether they were male or female" and said they were not "breaking any laws," but reported his sighting, nevertheless, to the city marshal. Clad in mufti sans any

badge of office, the marshal drove to the highway in an unmarked automobile accompanied by an acquaintance and three handguns "to see if [the strangers] might possibly have had something to do with * * * the burglary." Four miles outside of Lathrop the marshal overtook "the two boys" who turned out to be the defendants. The marshal had never seen either of them before. "They weren't breaking any laws [and] weren't carrying anything" that the marshal could see. When the marshal "asked if they wanted a ride * * * they opened the [car] door * * * and Mr. Phillips * * * started to get in [but] backed up and said they were just going to the house up the road. I asked him who lived there * * * and he couldn't tell me." Neither the marshal nor his companion had identified themselves, and Phillips' explanation for backing out of the car was that he saw that the driver "had a pistol in his hand [and] I didn't know whether he was going to rob us or what." In any event, the marshal and his associate alighted from the automobile with guns in hand and thus held the defendants captive while the marshal "frisked them and found the change [but no weapons] in their pockets and got them in the car and got right to town." Upon arriving in Lathrop, the marshal told the sheriff "out in the street" that "he had already discovered [the defendants] had coins in their possession." The sheriff told the defendants "they were under arrest for investigation of burglary of the hardware store," took them "over to City Hall," and directed them to empty their pockets, which they did. Thereafter the sheriff "read the Moranda [sic] warning to them." Defendant Goodman's left hip pocket contained a silk stocking which held a "dollar and thirty-four cents worth of pennies." Defendant Phillips' pockets contained two torn dollar bills, a two centavo piece which Gassman said "I'm not for sure" was missing from the store, and 242 pennies, nickels, dimes and quarters.

■ A peace officer [State v. Caffey, Mo., 436 S.W.2d 1, 2(1)] or a private citizen [State v. Keeny, Mo., 431 S.W.2d 95, 97(3)] possessed of knowledge that a recent felony had been committed, may arrest without a warrant anyone he has reasonable grounds to believe has committed the offense. Montgomery v. United States, 8 Cir., 403 F.2d 605, 608(1), 609(6); 5 Am.Jur.2d, Arrest, § 25, pp. 715–716, and § 34, p. 726. However, an arrest may not be used as a pretext to search for evidence [State v. Moody, Mo., 443 S.W.2d 802, 804(2)] and neither the subsequent discovery of incriminating evidence nor an ultimate conviction may be relied upon to uphold the validity of an arrest. State v. Seymour, Mo., 438 S.W.2d 161, 162–163(2); State v. Young, Mo., 425 S.W.2d 177, 182(4). The search of one's person is justified only if it is incident to a lawful arrest [State v. Harris, Mo. (banc), 321 S.W.2d 468, 470(1)], and in deciding whether the involved arrests and attendant searches were authorized, we must consider the constitutional issues in the light of the fundamental protections of the Fourth Amendment to the United States Constitution, as applied in the opinions of the Supreme Court of the United States [Stanford v. Texas, 379 U.S. 476, 481, 85 S.Ct. 506, 13 L.Ed.2d 431, 434(3), rehearing denied, 380 U.S. 926, 85 S.Ct. 879, 13 L.Ed.2d 813] which hold, inter alia, that the inestimable right against unreasonable searches and seizures belongs as much to the citizen on the street as to the homeowner closeted in his study to dispose of his secret affairs. Terry v. Ohio, 392 U.S. 1, 8–9, 88 S.Ct. 1868, 20 L.Ed.2d 889, 898(1).

■ The sheriff and the city marshal had knowledge that a felony had been committed at the Gassman store, so we initially proceed upon the assumption that the search of each defendant was within permissible limits provided it was incident to a lawful arrest. "The constitutional validity of the search in this case, then, must depend upon the constitutional validity of the [defendants'] arrest. Whether that arrest was constitutionally

valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendants] had committed or was committing [the] offense. * * * 'The rule of probable cause is a practical, non-technical conception affording the best compromise that has been found for accommodating * * * often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.' " Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225–226, 13 L.Ed.2d 142, 145(1, 2). The factual issue of probable cause must be resolved from the particular facts and circumstances in each case, bearing in mind that the requirement of probable cause can never be satisfied with a bare suspicion of guilt. Schook v. United States, 8 Cir., 337 F.2d 563, 564–565(1–2); Pigg v. United States, 8 Cir., 337 F.2d 302, 305(1).

■■■ Save for knowing that "the voice of the boy or man" had placed a telephone call from the hardware store, no one involved with the arrest of Goodman and Phillips was endowed with any information as to the identity or description of the person or persons who had entered the establishment at the time the defendants were sighted and accosted upon the roadway. The sheriff "didn't know who [he] was looking for," and the only reason the city marshal undertook the excursion on the nebulous reportings relayed by the newspaper carrier was upon the direction of the sheriff to bring in any strangers and "to see if [the strangers] might possibly have something to do with * * * the burglary." When observed, the defendants were "normally walking" on the highway shoulder, "they weren't breaking any laws [or] carrying anything" that could be seen to associate them with the crime. In short, neither defendant conducted himself in any manner to indicate he was fleeing from a felony. While an early morning perambulation along a public highway may not be a legal right usually exercised by the public in general, we are not wont to say that the mere discovery of a person so engaged, especially if he be otherwise unknown to the observer, constitutes probable cause or reasonably trustworthy information sufficient to warrant a prudent man in believing the pedestrian is guilty of having committed a felony. "[O]fficers are not authorized to arrest without warrant one who is lawfully traveling a public way and take him into custody on nothing more than *a bare suspicion* that he has * * * violated the law. Kersey v. State, Fla. 1952, 58 So.2d 155" [Cameron v. State, Fla.App., 112 So.2d 864, 867(1)], and "[t]he mere presence of an individual unknown to the police, in a suspicious place, can raise merely a suspicion that he has violated the law or committed a crime. Such suspicion cannot justify an arrest." Burks v. United States, 9 Cir., 287 F.2d 117, 122(3); cf. People v. Reulman, 62 Cal.2d 92, 41 Cal.Rptr. (banc) 290, 292–293(3), 396 P.2d 706, 708–709(3). Neither do we believe that defendants' declination of the proffered ride upon discovery that the unidentified driver of the automobile was armed, amounted to such furtive or suspicious conduct as would give a prudent person probable cause to believe they had committed a felony for "a furtive gesture alone is not sufficient to justify arrest or search without a warrant." People v. One 1958 Chevrolet Impala, 219 Cal.App. 2d 18, 33 Cal.Rptr. 64, 66(2); cf. People v. Cedeno, 218 Cal.App.2d 213, 32 Cal.Rptr. 246, 255(16), and People v. Lakin, 21 A.D.2d 902, 251 N.Y.S.2d 745, 746. In Davis v. Mississipppi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676, it was conceded no probable cause existed to arrest a 14-year-old for rape when the victim could give no better description of her assailant than that he was a Negro youth. Ergo,

a person would have even less probable cause if the lone basis for the arrest was that the subject apprehended was a stranger.

■ A person is under arrest when another takes charge of and control of his movements. State v. Sampson, Mo., 408 S.W.2d 84, 87(3); State v. Stokes, Mo., 387 S.W.2d 518, 522; 1 Restatement (Second) of Torts, § 112, p. 190; 5 Am. Jur.2d, Arrest, § 1, p. 695. There is no room for doubting that the defendants were under arrest, and so considered themselves, when the city marshal alighted from the car and, at gun point, took charge of the defendants, required them to raise their arms, submit to a search of their persons, and then, still at gun point, directed their entry into the automobile and caused them to be transported to Lathrop, where they were forthwith delivered to the sheriff, as the sheriff had requested the marshal to do.

■ Relying on City of Advance ex rel. Henley v. Maryland Casualty Company, Mo., 302 S.W.2d 28, 31–32(1–2) and Rodgers v. Schroeder, 220 Mo.App. 575, 580(1), 287 S.W. 861, 863(1), which are not attuned to the facts which concern us, defendants urge that their arrests by the city marshal were illegal because the arrests occurred outside the corporate limits of Lathrop, where the marshal had no authority to act. By its brief, the state concedes an arrest of the defendants was in fact effected by the marshal but argues that it was a valid arrest made by the marshal as a private citizen. However, neither the defendants nor the state defer to the authorities which thus far, at least, hold that the protection of the Fourth Amendment is against governmental action only and does not apply to unlawful searches and seizures by individuals. United States v. McGuire, 2 Cir., 381 F.2d 306, 312–314(3), cert. denied, 389 U.S. 1053, 88 S.Ct. 800, 801, 19 L.Ed.2d 848; State v. Overby, Mo., 432 S.W.2d 277, 279(4), and cases there cited. Nevertheless, we do not consider the last cited rule to be of any moment here because when the marshal arrested the defendants, as the state admits, he was either doing so in his official capacity or was acting under a posse comitatus.

■ In a proper case the sheriff may summon to his assistance any person to assist him in making an arrest for a felony. A posse comitatus, i. e., those called to attend the sheriff, may be summoned verbally. The mode is immaterial, so long as the object is to require assistance. A person so summoned is neither an officer nor a mere private person, but occupies the legal position of a posse comitatus and while cooperating with the sheriff and acting under his orders is just as much clothed with the protection of the law as the sheriff himself. It is not essential for a posse comitatus to be and remain in the actual physical presence of the sheriff; it is sufficient if the two are actually endeavoring to make the arrest and acting in concert with a view to effect their common design. State v. Parker, 355 Mo. 916, 920–921(1), 199 S.W. 2d 338, 339–340(1–2); Robinson v. State, 93 Ga. 77, 18 S.E. 1018, 1019, 44 Am.St. Rep. 127; 6 C.J.S. Arrest § 16 a., at p. 617; 80 C.J.S. Sheriffs and Constables § 34, pp. 202–203; 47 Am.Jur., Sheriffs, Police, and Constables, § 36, p. 847.

■ In this instance, the sheriff summoned the assistance of the marshal and enjoined him that "if he saw any strangers to bring them [in] regardless of who they were." It was in compliance with the sheriff's specific directions that the marshal accosted, arrested and searched the two strangers, and it was in accordance with the sheriff's summons for assistance that the marshal delivered the defendants to the sheriff immediately upon returning them to Lathrop. If the actions of the marshal were not taken in his official capacity as city marshal, then they were most assuredly the actions of a posse comitatus. The term "posse comitatus"

implies the power of the county [Village of Schofield v. De Lisle, 204 Wis. 84, 235 N.W. 396, 398(3)] and the action of a posse comitatus constitutes governmental action so as to render applicable the protections of the Fourth Amendment.

The arrests of the defendants were not authorized and the attendant searches of their persons were likewise unauthorized, and their motion to suppress should have been sustained. As it appears from the record that the state presented all evidence available on the subject of the defendants' guilt and that their guilt could not be sustained without the evidence which should have been suppressed, the judgments nisi are reversed and the defendants are ordered discharged.

SEILER, P. J., and HOLMAN, J., concur.

STORCKMAN, J., not sitting.