STATE of Missouri, Respondent,

v.

Gerald Keith **WHORTON**, Appellant.

No. 57128.

Supreme Court of Missouri,
Division No. 2.

Dec. 11, 1972.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Alfred O. Hardy, Kansas City, for appellant.

PER CURIAM:

Appellant was convicted of assault with intent to kill or do great bodily harm, without malice. Section 559.190, RSMo 1969, V.A.M.S. Appellant waived his right to a jury trial and the court sentenced appellant to confinement with the Missouri Department of Corrections for a period of four years.

The incident leading to appellant's conviction occurred on December 17, 1970. On this date, at approximately 9:40 p. m., Thresa Stella Draves was, with her father, William Draves, in the family automobile. Mr. Draves stopped the car at a Katz Drug Store at the intersection of Maple and Main Streets in Independence, Missouri, and went inside to make a purchase. As Mr. Draves was approaching the parking spot, both he and Thresa saw appellant walking north on Main Street. While Mr. Draves made his purchase in Katz, Thresa remained in the family car. She was sitting on the passenger side, next to the sidewalk, and the car's engine was left running. As Thresa sat in the car listening to the car radio, appellant came to the passenger's side of the automobile. He put

a knife to her side while telling her to scoot over and drive. She did as instructed and began driving south on Main. While she was driving, appellant sat right beside her and held a knife, which Thresa described as having a two to three inch blade, intermittently to her side and then to her neck. She had driven approximately six blocks at the direction of appellant when she stopped at a stop sign at the corner of Pacific and Osage. As she came to a stop, Thresa quickly opened the door, jumped out of the car, and ran to a nearby house. She first called the police and then her father.

A patrolman went to the house where she had taken refuge and took her to the police station, where she was reunited with her father. Thresa and her father looked at police photographs at the station in an attempt to identify her assailant. The police also held a lineup, but no identification was made, and she and her father left the police station about 12:00 or 1:00 a. m.

On December 18, 1970, appellant was arrested by Patrolman Ed Comer of the Independence Police Department at approximately 8:50 p. m. Patrolman Comer was patrolling in the area of the town square in Independence when he received information from the police dispatcher that a subject matching the description of the suspect of an aggravated assault on December 17, 1970, was in the vicinity of the square acting in a suspicious manner. The description Comer received was of a white male, in his mid-twenties, dark hair, wearing a three-quarter length green corduroy jacket, slight of stature and about 5'6" to 5'7" in height. Patrolman Comer saw appellant walking in an alleyway off Liberty Street wearing a green corduroy jacket, three-quarter length, with dark slacks and dark shoes. He arrested appellant on suspicion of the aggravated assault which occurred the evening before. Appellant was taken to the Independence Detective Unit and left in the custody of Detective David Emmons by Patrolman Comer. After being fully advised of his rights by Detective Emmons, appellant signed a "rights waiver" and appeared in a lineup with two other men. Thresa identified appellant as her assailant.

At trial, Thresa, Patrolman Comer and Detective Emmons testified for the respondent. Respondent then rested its case. Appellant orally moved to strike the in-court identification and all evidence relating to the claimed illegal arrest and illegal lineup. The motion was overruled. Appellant then moved for a Finding of Acquittal and this was also overruled. Appellant presented no evidence.

Appellant has taken this appeal alleging two grounds as error. Appellant contends that (1) "The Defendant's arrest on December 18, 1970, was without benefit of a warrant and the State of Missouri through Officer Ed Comer had no reasonable cause to make such an arrest of this Defendant." Appellant further contends that (2) "The Court erred in allowing any evidence of the alleged victim's identification of this defendant which came from a subsequent line-up or show-up or any in-court identification, since such evidence was secured subsequent to and by reason of the defendant's illegal arrest."

The law in Missouri on arrests without a warrant appears to be well settled. As this court pointed out in State v. Parker, 458 S.W.2d 241, 1. c. 244, " 'It has long been the rule in this state, and many cases set it forth, that a peace officer may arrest without a warrant any one who he has reasonable grounds to believe has committed a felony.' State v. Berstein, Mo., 372 S.W.2d 57, 59. Vol. 4, Mo.Dig., Arrest, ▇▇▇▇ See also Parker v. Swenson, 332 F.Supp. 1225, 1232 [8] (D.Ct.E. D.Mo.1971). As early as 1881, this court enunciated this rule as the law in Missouri. State v. Underwood, 75 Mo. 230, 237 (1881).

"Probable cause for a warrantless arrest is a constitutional criterion by which its legality is measured, Henry v. United States,

361 U.S. 98, 100, 80 S.Ct. 168, 4 L.Ed.2d 134. The substance of all definitions of probable cause is a reasonable ground for belief of guilt, Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879." State v. Ward, Mo., 457 S.W.2d 701, 705.

"What constitutes reasonable grounds to believe that an offense has been committed by the person arrested is incapable of an exact definition beyond saying that the officer must not act arbitrarily, must exercise his discretion in a legal manner, must use all reasonable means to prevent mistakes and must be actuated by such motives as would influence a reasonable man acting in good faith. State v. Cantrell, Mo., 310 S.W.2d 866, 869 [6]; Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 225 [2, 3], 228 [10], 13 L.Ed.2d 142. See generally 6 C.J.S. Arrest § 6 d(1), p. 596." State v. Jefferson, Mo., 391 S.W.2d 885, 888 [5]. See also Cook, Probable Cause to Arrest, 24 Vand.L.Rev. 317 (1971). As we consider the facts of this case, it is sufficient to say that " . . . when the constitutionality of an arrest is challenged it is the function of the court to determine whether the facts available to the officers at the moment of the arrest would warrant a man of reasonable caution in the belief that an offense has been committed by the arrested, Pendergrast v. United States, 135 U.S.App.D.C. 20,] 416 F.2d 776." State v. Ward, supra, 457 S.W.2d 705–706.

Thresa Draves saw appellant walking on the street near where her father parked the family car. In addition, she was able to view appellant as she drove the car at his direction for a distance of six to eight blocks before escaping. Thresa had sufficient opportunity to see appellant and she was able to give a description of appellant to the investigating police officer. The police knew that her assailant was a white male in his mid-twenties; with dark hair; wearing dark pants and shirt and a dark jacket, "not black, but like grey or brown"; and that he was slight of stature and about 5′6″ to 5′7″ tall. Thus, when Officer Com-

er was informed by the police dispatcher that a man matching the description given by the assault victim, wearing a green corduroy jacket, was acting suspiciously in the area of the square, Comer had reasonable grounds to believe that this was the man who approximately twenty-four hours before had committed a felony by assaulting Miss Draves with a knife. We hold that the arrest was lawful.

■ First, it should be noted that "[i]n dealing with the problem of informants whose information may or may not be sufficient to create probable cause, . . . a citizen who purports to be the victim of or to have witnessed a crime is a reliable informant even though his reliability has not theretofore been proven or tested." People v. Gardner, 252 Cal.App.2d 320, 60 Cal.Rptr. 321, 324 [6]. In Gardner, the victim of a robbery, Bell, described his robber for investigating officers. The Court then said, "Since that information was reliable it did not lose its reliability when it was transmitted by these officers to police communications and in turn to other police officers who heard such communications . . . It is well settled that where reliable information is originally imparted to the police, the fact that such information does not come directly from the informant to the arresting officer does not prevent the latter from relying on its trustworthiness when it reaches him through official channels." People v. Gardner, supra, 60 Cal.Rptr. at 324–325 [7, 8].

■ It is true that bare suspicion is not enough to make an arrest. State v. Goodman, Mo., 449 S.W.2d 656. However, the fact that appellant was acting suspiciously in the area of the square, coupled with the fact that he matched the description given by the victim of the assault, did give the police dispatcher and Officer Comer probable grounds to believe that appellant had committed the felony on the previous night.

"The existence of probable cause for an arrest must necessarily depend upon the facts of each particular case. 'The existence of "probable cause," justifying an arrest without a warrant, is determined by factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. It is a pragmatic question to be determined in each case in the light of the particular circumstances and the particular offense involved.' 5 Am.Jur.2d, Arrest, § 48, p. 740." State v. Seymour, Mo., 438 S.W.2d 161, 163. In State v. Craig, Mo., 406 S.W.2d 618 and State v. Johnson, Mo., 420 S.W.2d 305, this court upheld arrests based upon information received from radio transmissions. "In Craig, an arrest on the basis of a radio report giving brief description of the suspects, and suspect car, even though not entirely accurate, was upheld. * * * . . . [I]t is imperative that officers have the most modern means available (such as radio) to immediately disseminate descriptions of suspects and suspect vehicles to law enforcement officers in surrounding areas miles from the scene in order to identify and apprehend such law violators. As long as the apprehending officers have sufficiently reliable and trustworthy information to warrant a man of reasonable caution to believe that a criminal offense has been committed by the suspect, the arrest will stand the constitutional test." State v. Ward, supra, 457 S.W.2d 706 [7, 8].

"If police officers could not thus base the existence of reasonable cause upon bona fide information communicated to them in the performance of their duties, their hands would be very effectively tied." State v. Witt, Mo., 371 S.W.2d 215, 219. See also State v. Burnett, Mo., 429 S.W.2d 239, 241.

Appellant cites State v. Goodman, Mo., 449 S.W.2d 656; State v. Seymour, Mo., 438 S.W.2d 161; and Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) in support of his contention that Officer Comer "had no reasonable cause to make such an arrest" of appellant. These cases cited by appellant are factually distinguishable from the case at bar. In Goodman, supra, two men were picked up and arrested for a crime because they were strangers in a small town, walking along a roadside at an early hour of the morning. In holding the arrest invalid, this court said, " . . . *no one* involved with the arrest of Goodman and Phillips *was endowed with any information as to the identity or description of the person* or persons who had entered the establishment at the time the defendants were sighted and accosted upon the roadway." [Emphasis added.] State v. Goodman, supra, 449 S. W.2d 660. In the case of Davis v. Mississippi, defendant was arrested even though "[t]he victim could give no better description of her assailant than that he was a Negro youth." Davis v. Mississippi, 394 U.S. 721, 722, 89 S.Ct. 1394, 1395 (1969). In State v. Seymour, Mo., 438 S.W.2d 161, this court held that mere association with a person suspected of a crime does not, in and of itself, furnish reasonable grounds for arrest. See State v. Britton, Mo., 444 S.W.2d 465.

Appellant's second point is based on the argument that evidence pertaining to any lineup procedure following an illegal arrest should be suppressed. Since we have found the arrest to have been proper and legal, we need not discuss the latter point in view of there not being any attack on the lineup itself.

The judgment is affirmed.

All of the Judges concur.