**STATE of Missouri, Respondent,**

v.

**Sonny TOWNES, Appellant.**

**No. 55253.**

Supreme Court of Missouri,
Division No. 2.

Dec. 14, 1970.

Motion for Rehearing or Transfer to Court En Banc Denied Jan. 11, 1971.

John C. Danforth, Atty. Gen., Craig A. Van Matre, Asst. Atty. Gen., Jefferson City, for respondent.

John A. Blumenfeld, Blumenfeld, Kalishman, Marx & Tureen, St. Louis, for appellant.

FINCH, Judge.

Defendant, prosecuted under the Second Offender Act (§ 556.280, V.A.M.S.), was

found guilty by the jury of robbery in the first degree by means of a dangerous and deadly weapon (§ 560.135, V.A.M.S.). The court fixed his punishment at imprisonment for ten years, and he appealed. We affirm.

On August 16, 1968, at approximately 12:30 p.m., a grocery store in St. Louis was entered by two men who proceeded at gunpoint to take cash, checks and food stamps from the cashier, Johnnie Mae Turner, and money and a gun from Willie Macklin, the owner. In addition, money and a wallet were taken from Dan Hornback, a route salesman, who entered the store while the robbery was in progress. The robbers were in the store for five minutes or more and were not masked. When they left the robbery was reported to police officers in the vicinity and they were given descriptions of the two men. Shortly thereafter, two officers in a police car in that neighborhood observed two men who corresponded to the broadcast description of the robbers. The officers gave chase but the two men ran and escaped. However, the officers traced one man to a nearby house where he had broken a basement window and entered the building. The owner of the house admitted the officers and they found defendant hiding underneath a rug behind a chair on the sun porch. In searching him the officers found the wallet taken from Hornback and a brown paper sack which had been in the cash register and on which had been written by Macklin the name and telephone of the cashier, Johnnie Mae Turner. They also found money, food stamps and a check which had been cashed at the grocery store shortly before the robbery and which was taken in the holdup. In addition, a snubnosed .38 caliber revolver was on the chair behind which defendant was hiding. It fit the description of the gun used by the man who held up the cashier and route salesman. The clothes worn by defendant when apprehended corresponded to the clothes worn by said robber.

Defendant was arrested at about 1:05 p.m., approximately half an hour after the robbery. Because he had or feigned some attack or seizure when arrested, he was taken to a hospital and then to the police holdover station in that district. At about 1:45 p.m., Johnnie Mae Turner, Willie Macklin and Dan Hornback were taken by officers to the holdover where they individually viewed the defendant. Each of them identified him as the one who had been in the store and had held Johnnie Mae Turner and Dan Hornback at gunpoint during the robbery.

On appeal, defendant asserts two grounds for relief. In the first place, he contends that the in-court identifications by witnesses Macklin, Turner and Hornback were tainted by reason of the fact that they were permitted to view defendant at the holdover station shortly after his apprehension at a time when he did not have counsel as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States. Defendant relies primarily on United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, contending that these confrontations by witnesses constituted a critical stage at which defendant had a constitutional right to counsel. Secondly, defendant claims that the court erred in overruling the motion for a mistrial and in refusing to strike the testimony of Macklin and Turner as to the identification of defendant at the holdover for the reason that the *per se* exclusionary rule of Gilbert is applicable.

The State contends that these issues are not before us because timely objection to admittance of the testimony was not made. The transcript discloses that witnesses Macklin and Turner both testified without objection on April 21, 1969, telling of the holdup and identifying the defendant as the person who had held a gun on Johnnie Mae Turner and Dan Hornback and taken money and other items from them. They also testified as to their confrontation with

and identification of the defendant at the holdover shortly after his arrest. When court convened the next morning the defendant filed a motion to strike all the testimony of Macklin and Turner concerning their identification of defendant on the grounds that defendant had been confronted by the witnesses at the holdover when he was without counsel, that the confrontations were suggestive and conducive to mistaken identity, and that as a result the in-court identifications by the witnesses were so tainted as to make them improper and inadmissible. Defendant also moved for a mistrial on the ground that the testimony as to the identification of the defendant at the holdover was so prejudicial that a fair trial was not possible. In spite of the fact that these motions were filed the next day after the testimony had been admitted without objection, the trial court went ahead and considered them, taking testimony outside the presence of the jury on the issues presented. At the conclusion of the hearing, the court held that the identification testimony was not tainted or illegal and overruled the motions. The questions thereafter were preserved in the motion for new trial. Under these circumstances, we have concluded to consider the motions to strike and for a mistrial, as did the trial court.

Whereas Wade and Gilbert, the cases relied on by defendant, involved traditional lineups in post indictment or information situations, we are dealing here with a situation wherein a short time after a crime was committed the police apprehended a person whom they had reason to believe was the offender and they had him viewed immediately by the victims in order to ascertain whether the person apprehended should be held or whether he should be released and the search for the real offender continued.

In State v. Hamblin, Mo., 448 S.W.2d 603, 608, this court considered the applicability of Wade and Gilbert to a situation comparable to that now under consideration. In Hamblin a robbery occurred at about 8:30 a.m. Perhaps thirty minutes later, defendant and two other persons were arrested a few miles from the scene. The victim had been taken to the hospital for treatment and the police took the three persons apprehended to the hospital to be viewed by the victim to ascertain whether or not they were the persons sought for the robbery. The question presented in Hamblin was whether the in-court identification by the victim was so tainted as a result of the confrontation without counsel at the hospital as to make the victim's in-court testimony inadmissible under Wade and Gilbert.

We held in Hamblin, after reviewing numerous federal and state decisions, that in the factual situation there presented, Wade and Gilbert were not applicable and that in such a situation it was proper and desirable for the police to ascertain at the earliest possible moment whether the person arrested and detained was or was not the person sought. We relied particularly on the case of Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280, certiorari denied 395 U.S. 928, 89 S.Ct. 1786, 23 L. Ed.2d 245, wherein, after a break-in at a shoe shine shop in the District of Columbia, the officer arrested a man who fit the radioed description of the suspect and then took him to the shoe shine shop to be viewed by the man who had observed the culprit coming out of the shop after the break-in. The court in Russell concluded that prompt confrontations under such circumstances probably would assure reliability of identification and thus promote fairness and held that Wade did not require exclusion of the testimony of the witness who thus observed the defendant shortly after his arrest.

■ Pursuant to Hamblin and the cases therein cited, we hold that absent specific evidence that the confrontation was conducted so as to be unduly suggestive or unfair, prompt on-the-scene confrontations do not entail due process violations and are not prohibited by Wade and Gilbert. There was no evidence that the confronta-

tion in this case was unduly suggestive or unfair. In that connection, we think it is of no significance that the confrontation was at the police holdover instead of at the place where the break-in occurred, as in Russell, or at the hospital, as in Hamblin. In each instance the confrontation was within a very short time after the crime was committed and after the person was apprehended. Each was a prompt confrontation to determine whether the person apprehended should be held or whether he should be released and a further search made.

Having reached the conclusion that Wade and Gilbert do not make the in-court identifications by Macklin and Turner inadmissible, we need not consider whether there was an independent basis for their in-court identifications. In passing, however, we note that the evidence in the transcript is clear and convincing proof to sustain the conclusion of the trial court that there was an independent basis for the in-court identifications and that they were not tainted and inadmissible.

The remaining question for consideration is whether the admission of testimony as to the confrontation at the holdover was *per se* bad so that it should have been stricken on motion or the motion for mistrial sustained.

It is true that Gilbert held that testimony that witnesses identified Gilbert at the lineup was *per se* bad unless the court could declare a belief that it was harmless beyond a reasonable doubt and that therefore the State should not have an opportunity to offset the admission of such testimony by showing that it had an independent source. However, that conclusion was based on the premise that the absence of counsel at the lineup violated Gilbert's constitutional right to presence of counsel, and hence made the lineup impermissible. This is demonstrated conclusively by the court's statement, 388 U.S. l.c. 273, 87 S.Ct. l.c. 1957, that "Only a *per se* exclusionary rule as to such testimony can be an effective

sanction to assure that law enforcement authorities will respect the accused's constitutional right to the presence of his counsel at the critical lineup."

 Having concluded that Wade and Gilbert do not apply to prompt so-called on-the-scene confrontations, it follows that absence of counsel thereat does not make the confrontation illegal or impermissible. Consequently, sanctions to prevent such a confrontation would be neither necessary or proper. Such conclusion necessarily means that the *per se* exclusionary rule of Gilbert would be inapplicable to testimony concerning an on-the-scene identification. For that reason, the court did not err in refusing to strike the testimony of Macklin and Turner and did not err in overruling the motion for a mistrial.

Judgment affirmed.

All of the Judges concur.