**STATE of Missouri, Respondent,**

v.

**Melvin Perry MARTIN, Appellant.**

**No. 55838.**

Supreme Court of Missouri,
Division No. 1.

April 12, 1971.

John C. Danforth, Atty. Gen., Charles A. Blackmar, Asst. Atty. Gen., Jefferson City, for respondent.

Karl F. Lang, St. Louis, for appellant.

WELBORN, Commissioner.

Melvin Perry Martin was found guilty by a jury in the St. Louis Circuit Court of robbery in the first degree with a deadly weapon. Acting under the Second Offender Act, the court assessed punishment of ten years' imprisonment. This appeal followed.

On the afternoon of December 17, 1968, two men entered a Conrad, Incorporated delivery truck after its driver, Richard Chaney, had made a delivery to a retail liquor store in St. Louis. One of the two men pointed a gun at Chaney and told him to get off the seat and into the back. Chaney crouched on the floor of the truck and while the pistol was held at his head, the other man got into the driver's seat and drove the truck away. While the truck was being driven around, Chaney was ordered to give the robbers the money. He surrendered some $46 in currency of his employer and his billfold from which the robbers took the currency and returned the billfold. They also took Chaney's watch.

After driving around for some fifteen to twenty minutes, the robber tied Chaney's hands with strips of toweling and also tied a strip around his head, over his eyes. After a few more minutes of driving, the truck was stopped in an alley to the rear of the 3100 block of Union Boulevard. The driver got out and told Chaney to get into the rear of the truck. The driver had difficulty opening the rear door and then Chaney heard the man with the gun say, "Let's get out of here." Chaney thought the man was talking to him and tried to straighten up. Just then he heard a shot fired. He stood up, removed the bindings from his wrists and eyes and saw a police car near the truck.

Chaney did not see a police officer. He got out of the truck and went to the police car and said over the auto radio, "Can anybody hear me? Can anybody hear me?" He received a reply, "Go ahead." Before he could say anything further, he saw a man approaching the police car from the direction from which he had heard the shot. Fearing the person might be one of the robbers, Chaney left the police car and ran down the alley. He met a man who took him to his house to telephone the police. While he was making the call, Chaney saw police cars outside the house and went out and reported what had occurred.

At around 2:00 P.M. on the date in question, Officer Herman Thomas of the St. Louis Police Department was patrolling on Greer Avenue in a marked police car. He saw the Conrad truck in the alley at the rear of 3100 Union. He was suspicious about the presence of the truck at that location and turned his car into the alley and drove toward the truck. As he approached, two men got out of the truck and ran. He parked his car about twenty feet from the truck and ran in pursuit. One of the two men carried a gun in his left hand which discharged during the pursuit. The weapon was not pointed toward the officer who was about two hundred feet away. One of the men got out of the officer's view, but he followed the one with the gun for a block or so. The man crossed Union and the officer could not continue the pursuit because of the traffic. He returned to his patrol car and "put out" a description of the two men he had seen as "two Negro males, approximately five foot eight or nine, wearing dark colored clothing."

Sergeant William Ogborn of the St. Louis Police Department was patrolling in a police car several blocks away and heard Chaney's call over the police radio. As he was trying to trace that call, he heard a voice which he recognized as belonging to one of his officers. The officer was winded and spoke in an agitated voice, saying that he had been pursuing two "subjects," wanted for a possible holdup. Sergeant Ogborn heard the officer say that one of the men wore dark clothing and that they were running east across Union at Labadie.

Shortly after hearing the officer's call, Sergeant Ogborn saw a Negro man run-

ning through a yard at Norwood and Greer Avenues, about a block and a half from Union and Labadie. Sergeant Ogborn pursued the man in his car and on foot for about a block and a half.

Officer Richard Harvey of the St. Louis Police Department also responded to the police call and saw the same man running across an alley at the rear of 5235 St. Louis Avenue, some three and a half blocks from where the truck had stopped. He ran in pursuit of the man, along with Sergeant Ogborn, into the rear of the yard at 5235 St. Louis Avenue. There he and Ogborn found appellant Martin crouched alongside the porch of the house. Ogborn placed Martin under arrest "because I thought he possibly could be good for a holdup." Harvey searched Martin and took from him $66 in currency, forty-six one-dollar bills and two ten-dollar bills. No gun was found on Martin; nor did he have Chaney's watch.

Chaney was brought to where Martin was in custody and identified Martin as the man who held the gun on him in the holdup.

A motion was filed by appellant to suppress evidence obtained by the search on the arrest. The motion charged that the arrest was without probable cause and provided no basis for the subsequent search. Officer Thomas and Sergeant Ogborn testified on the hearing on the motion and the motion was overruled. The trial court's ruling on that issue is challenged on this appeal.

█ The question thus presented is whether or not Sergeant Ogborn and Offirer Harvey had probable cause to arrest appellant. That in turn depends upon whether they had probable cause to believe that a felony had been committed and that appellant was the perpetrator of the offense. "The existence of 'probable cause,' justifying an arrest without a warrant, is determined by factual and practical considerations of everyday life on which reasonable and prudent men, not legal techni-

cians, act. It is a pragmatic question to be determined in each case in the light of the particular circumstances and the particular offense involved." 5 Am.Jur.2d, Arrest, § 48, p. 740. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142.

Officer Thomas had no precise knowledge of what had occurred when he first came upon the truck and he did not know fully what had happened for several minutes after his pursuit of the two men and his first radio call. However, the circumstances of the presence of the truck at an unexpected location, the flight of the two men from it, and the possession of a weapon by one of the two men would make reasonable the conclusion by Officer Thomas that a robbery had occurred. Appellant acknowledges that Thomas may have had probable cause to arrest the two men at that time. However, Thomas did not do so and the question thus becomes whether or not the information communicated via police radio to other officers afforded reasonable grounds, in the light of the circumstances apparent to such officers, to justify the arrest of appellant. Thomas was asked on the pretrial hearing on the motion to suppress what description of the men he had pursued he had put out on the radio. He replied: "[T]wo Negro males, approximately five foot eight or nine, wearing dark colored clothing." He was not asked whether his radio call went further. Sergeant Ogborn testified that he first heard Chaney's call on the radio and in a few minutes heard on the police radio a voice which he recognized as one of his officers, talking very winded and agitatedly, stating that he had just pursued two subjects, wanted for a possible holdup, and that they were running east across Union at Labadie. Ogborn stated that the description he received was "vague." He recalled only that one of the pursued was described as "wearing dark clothing." Although Ogborn did not identify the voice as that of Officer Thomas, he did recognize it as the voice of a person under his command and the circumstances warrant the conclusion that the voice was, in fact, that of Officer

Thomas. The call which Sergeant Ogborn received was sufficient to direct his attention to appellant. He saw appellant running a short distance from where Officer Thomas reported that he had been pursuing two Negro males. When he took up the pursuit of appellant, appellant attempted to conceal himself. When Sergeant Ogborn and Officer Harvey discovered appellant hiding, they, in view of all of the circumstances then known to them, acted reasonably in placing appellant under arrest.

The action of the officers is not to be considered unreasonable because of alternatives which might have been available to them. Appellant suggests that better police practice called for only a "pat down" of appellant and an endeavor by the officers to obtain further information prior to placing appellant under arrest. Appellant suggests that a procedure which met with approval of the court in State v. Ward, Mo. Sup., 457 S.W.2d 701, would have been more appropriate. However, the problem presented to the officers was a practical, not an academic, one. They had information that two persons had been involved in the robbery. Knowing nothing of the whereabouts of the accomplice and having good reason to believe that appellant was one of the criminals, the officers were not required to choose what, in retrospect, might appear to have been a better alternative. They were authorized to do what they did and place appellant under arrest. The arrest being legal, it is elementary that the search of appellant's person as incident of the arrest was also legal.

Determination of the issue here presented is primarily a factual matter, under the oft-repeated general principles set out above. Appellant has cited no case comparable to the facts here. The situation in State v. Goodman, Mo.Sup., 449 S.W.2d 656, is distinguishable. In that case, much as in Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676, the arrest was the product of a general order to pick up strangers. In Davis, the operation involved a general dragnet. Here the information was sufficiently specific, in view of all of the surrounding circumstances, to direct the officer's attention to appellant and justify his arrest. In Kansas City v. Mathis, Mo.App., 409 S.W.2d 280, the testimony of the officer who undertook to make the arrest showed clearly that the arrest was not based upon any criminal activity of the defendant. Here the arrest was based upon the report connecting appellant with a robbery.

Without belaboring the point further, we find that the actions of the arresting officers in this case comported with the requirements which must be met to justify an arrest without a warrant. State v. Johnson, Mo.Sup., 463 S.W.2d 785, decided February 8, 1971; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L. Ed. 1879; Williams v. United States, 113 U.S.App.D.C. 371, 308 F.2d 326.

Appellant's second contention is that the trial court should have granted a new trial because the prosecuting attorney deliberately suppressed evidence which would have shown that the testimony of the prosecuting witness, Chaney, differed materially from his account to the police officers who investigated the offense.

As above recited, Officer Harvey testified that he searched appellant and found forty-six one-dollar bills and two ten-dollar bills. Chaney testified that he had a safe in his truck in which he deposited currency of his employer of five-dollar and above denominations. He kept one-dollar bills of the company folded singly in his trouser pockets and his own money in his wallet. He testified that he had forty-two to forty-four dollars in one-dollar bills in his pocket at the time of the robbery and that he delivered the money to the robbers. He testified that he also handed over his billfold and they took the money in it, but he was unable to say how much money was in his wallet.

At the hearing on the appellant's motion for new trial, a police report of the inci-

dent was produced. The entire report was not placed in evidence and only the portions which were read in the argument on the motion for new trial are before us. The report was prepared by an Officer Busso or Russo, who testified neither at the trial nor on the hearing on the motion for new trial. The following was dictated into the record from the report: "It is to be noted at the time the two suspects entered the truck at 3800 Page, the arrested subject reached into the victim's righthand pocket, removed his wallet, took four of the previously-mentioned dollar bills, and returned it to his pocket; then he reached into the victim's right front trouser pocket and removed the remainder of the money and also the mentioned watch from his right wrist." The description of the property taken in the robbery, as set out in the report, was also read into the record, as follows: "one yellow gold wristwatch with a light brown Nylon band, brand unknown; secondly, an undetermined amount of singles U.S. currency approximately sixty-six dollars total value."

Appellant's argument is that the police report shows that Chaney told police that approximately $66 in one-dollar bills had been taken in the robbery, whereas he had testified at the trial that forty-two to forty-four dollars in one-dollar bills, plus an unknown amount of currency from his billfold, had been taken. Appellant argues that the discrepancy is quite material because the matching of the money found on appellant with that Chaney says was taken was important in connecting appellant with the offense, particularly since neither a gun nor Chaney's watch was found on the defendant. Appellant argues that the prosecutor deliberately withheld the fact that Chaney's trial testimony differed from what he had told the police and that the prosecutor thus suppressed evidence which he knew would have been helpful to appellant.

The record here does not support such an argument. The police report simply does not show that at the time of the investigation Chaney stated that sixty-six one-dollar bills had been taken. The only support for the argument is in the report of the property stolen as "an undetermined amount of singles U.S. currency approximately sixty-six dollars total value." That statement is not attributed to Chaney. It obviously is the officer's conclusion based upon what Chaney must have stated. However, if the report had intended to state that all of the currency taken was "singles," there would have been no occasion to refer to an "undetermined amount of singles" as the amount of singles would necessarily have corresponded with the amount taken. The statement in the report is not so clear and unambiguous that it should have caused the prosecutor to realize that there was a discrepancy between the contents of the statement and the trial testimony.

The situation here is not governed by the cases relied upon by appellant, particularly State v. Thompson, Mo.Sup., 396 S. W.2d 697, in which the prosecutor not only suppressed favorable evidence but, by his argument, misled the jury to believe that such evidence did not exist. 396 S.W.2d 702–703[6]. There is no charge and nothing offered to support a charge that the prosecutor conspired with the witness to produce false testimony, as alleged in State v. Eaton, Mo.Sup., 280 S.W.2d 63. Federal decisions cited by appellant, including Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217; Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9, Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214, and United States ex rel. Meers v. Wilkins, 2 Cir., 326 F.2d 135, require the prosecutor to disclose evidence known to him which would be favorable to the defendant. That rule is inapplicable for the reason that the contents of the police report did not reasonably appear to be favorable to appellant and contrary to the witness's trial testimony.

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

SEILER, P. J., BARDGETT, J., and SEMPLE, Sp. J., concur.

HOLMAN, J., not sitting.