**STATE of Missouri, Respondent,**

v.

**Cornelius DODSON, Appellant.**

**No. 56969.**

Supreme Court of Missouri,
Court en Banc.

March 12, 1973.

————◆————

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Allan Seidel, Jefferson City, argued, for respondent.

Martin J. Toft, Keefe, Schlafly, Griesedieck & Ferrell, Orville Richardson, Hullverson, Richardson & Hullverson, James A. Tulley, St. Louis, for appellant.

SAMUEL E. SEMPLE, Special Judge.

Appellant was charged and convicted by a jury of first degree robbery by means of a dangerous and deadly weapon and having also been tried under Section 556.280, RSMo 1969, V.A.M.S., was sentenced by the court to twenty-five years' imprisonment. Appellant appeals from that conviction and sentence.

On the morning of November 6, 1970, Harry Hoock, age 68, his wife, Pearl Hoock, age 62, and a friend, Ellen Klein, all of Cahokia, Illinois, were driven to St. Louis by Miss Klein to Barnes Hospital and, following that visit, Miss Klein drove the Hoocks to the Atlas Wholesale House located at 17th and Lucas in the City of St. Louis, Missouri. At about 11:30 a. m., on that date they drove into the parking lot back of the Atlas Wholesale House and parked near the building. A young Negro carrying a folded paper bag, who had been standing by the northwest corner of the building, walked over to the car as Mr. Hoock was getting out, opened the bag, produced a pistol, and held it on Mr. Hoock and ordered him to drop his billfold into the paper bag. Mr. Hoock complied. The man then proceeded to take Mrs. Hoock's purse as she got out of the car. Miss Klein was still seated in the car and the robber then leaned into the car for the purpose of getting Miss Klein's purse. A shot was fired into the seat upholstery and Miss Klein's purse was taken. The robber dumped the contents of the women's purses on the ground and took the currency in the purses. A total of $170 in currency was taken from the Hoocks and Miss Klein. The robber then walked back to the alley at the northwest corner of the building and disappeared.

At about the time the robber left, a panel truck drove into the parking lot. Mrs. Hoock cried to the driver that they had been robbed. The driver went into the Atlas Wholesale House followed by the Hoocks and Miss Klein. The police were called and, upon arrival, took a description of the robber from the three victims. These descriptions were phoned into the police headquarters and a police radio broadcast shortly followed. In substance the broadcast was, "Holdup at 1701 Lucas, one Negro male, about 25 years old, five foot six, weight about 140. He is wearing a blue stripe or tan striped sweater, which could have been a pullover. He had a gun. Last seen going north across parking lot. Disappeared from view." Within seven to twelve minutes after the broadcast two police officers saw appellant walking about four blocks north of the scene of the hold-

up and he was placed under arrest. Appellant was thereupon searched and $159 in currency being found upon his person was seized by the arresting officers. Appellant was then placed in the police car and was taken back to the scene of the holdup where he was identified by Mr. and Mrs. Hoock and Miss Klein as being the man who held them up. This identification occurred about 30 minutes after the holdup.

Appellant testified that at the time of his arrest he was six feet tall, weighed 170 pounds, and was 18 years old. The arresting officer testified he was wearing blue jeans without a belt, had a grey sweater which buttoned down the front with orange stripes only on the front of it. These clothes were taken from him at the police station after his arrest. He also testified he was wearing an orange T-shirt under the sweater.

Appellant contends the court erred in admitting into evidence defendant's clothes (trousers and sweater) and the $159 in currency seized from him at the time of his arrest and search because he was arrested without a warrant and without probable cause. He argues that his arrest could only have been made upon the basis of the police radio broadcast of a description which did not fit him or the clothes he was wearing. That he was arrested in an area highly populated with Negroes and made no attempt to avoid arrest.

■ The existence of probable cause for an arrest must necessarily depend upon the facts of each particular case. "The existence of 'probable cause,' justifying an arrest without a warrant, is determined by factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. It is a pragmatic question to be determined in each case in the light of the particular circumstances and the particular offense involved." 5 Am.Jur.2d, Arrest, § 48, p. 740. State v. Seymour, Mo., 438 S.W.2d 161, 163; State v. Pruitt, Mo., 479 S.W.2d 785, 788.

■ It has been said that the substance of all definitions of probable cause is a reasonable ground for belief of guilt. Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879. Much less evidence than is required to establish guilt is necessary. Draper v. United States, 358 U.S. 307, 311–312, 79 S.Ct. 329, 3 L.Ed.2d 327; Bailey v. United States, 128 U.S.App.D.C. 354, 389 F.2d 305, 308, 309.

■ The police officer obviously acting on the police radio broadcast reporting an armed robbery, arrested appellant who was a young Negro man of medium build, wearing a striped sweater. All within a short time after the crime was committed and within seven to twelve minutes of the time of the radio report about four blocks from the scene of the crime and in the direction which the suspect left the scene of the crime. It should also be noted that although appellant was with two friends at the time, only he was arrested by the police officer.

The action of the police officer in making the arrest was not unreasonable. It does not appear significant that the man arrested was not wearing a small cap and carrying a gun and paper bag or that his height, weight and exact age corresponded precisely with the broadcast description.

The determination of the question presented here is one of fact applied to the much quoted principles set out herein. The cases cited by appellant do not apply to the facts presented in this case. State v. Goodman, Mo., 449 S.W.2d 656, and Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676, cited by appellant, are distinguishable in that they involved orders to pick up strangers and an order to pick up a number of persons, a so-called dragnet operation. In this case the information was sufficiently specific when considered in the light of all the surrounding circumstances to direct the police officer's attention to appellant and justify his arrest. It is hereby determined that the

police officer had reasonable grounds for belief of guilt in making the arrest of appellant. State v. Martin, Mo., 465 S.W. 2d 594, 597; Bailey v. United States, supra, 128 U.S.App.D.C. 354, 389 F.2d 1. c. 308, 309; Brinegar v. United States, supra; State v. Craig, Mo., 406 S.W.2d 618.

Appellant's next contention is of error of trial court in overruling appellant's pretrial motion to suppress evidence of the out-of-court identifications of appellant at the scene of crime by the victims after appellant's arrest, and in admitting evidence over objection of appellant that the out-of-court identification had been made, and in overruling appellant's objections to in-court identification of appellant which were tainted by improper out-of-court identifications.

The appellant contends that the out-of-court identifications were illegal because (1) they violated his right to counsel protected by the United States and Missouri Constitutions, and (2) they violated his right to due process of law guaranteed by those Constitutions. Appellant relies principally on United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, arguing that the out-of-court identifications by witnesses constituted a critical stage of the case at which appellant had a constitutional right to counsel.

▇ Appellant was arrested, searched, and the currency found on him was seized. He was placed in the police car and driven back to the parking lot where the robbery occurred. Mr. Hoock walked over to the police car and identified the appellant seated in the back seat as the man who had robbed him and the others. Mrs. Hoock and Miss Klein also identified appellant there in the parking lot. There was no evidence that the police officers suggested to Hoocks and Miss Klein that appellant was the man who robbed them. There was evidence that all three of these people were close to appellant for up to 10 minutes during the robbery. The identifications by all three persons were made about 30 minutes after the robbery.

The Wade and Gilbert cases relied upon by appellant involved traditional lineups in postindictment or information situations. The situation presented in this case is one wherein a short time after a crime was committed the police arrested a person whom they had reason to believe was the offender and had him viewed immediately by the victims to ascertain whether the person apprehended should be held or released.

In State v. Hamblin, Mo., 448 S.W.2d 603, 608, and State v. Townes, Mo., 461 S. W.2d 761, 763, 764, this court held that in similar factual situations the Wade and Gilbert cases were not applicable and in such situations it was proper and desirable for the police to ascertain at the earliest possible moment whether the person arrested was or was not the person sought. The Hamblin and Townes cases relied particularly on the case of Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280, certiorari denied 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245, wherein, after a break-in at a shoe shine shop, an officer arrested a man who fit the radio description of the suspect and then took him to the shoe shine shop to be viewed by the man who observed the culprit coming out of the shop after the break-in. The court in the Russell case concluded that prompt confrontations under such circumstances probably would assure reliability of identification and thus promote fairness and held that Wade did not require exclusion of testimony of the witness who thus observed defendant shortly after his arrest. "Having concluded that Wade and Gilbert do not apply to prompt so-called on-the-scene confrontations, it follows that absence of counsel thereat does not make the confrontation illegal or impermissible. Consequently, sanctions to prevent such a confrontation would be neither necessary [n]or proper. Such conclusion necessarily

means that the *per se* exclusionary rule of Gilbert would be inapplicable to testimony concerning an on-the-scene identification." State v. Townes, supra, 461 S.W.2d 1. c. 764. It thus appears that the lack of counsel at the on-the-scene confrontation in this case did not make the confrontation illegal and the court did not err in denying appellant's pretrial motion to suppress evidence of out-of-court identification and in overruling appellant's objections to in-court identifications of appellant by victims of the robbery based on the out-of-court identifications.

Appellant also urges that the court erred in overruling his motion to suppress the out-of-court identifications permitting evidence over his objection of out-of-court and in-court identifications because the out-of-court identifications which were admitted and formed the basis for the in-court identification were conducted under procedures and circumstances so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification thus denying appellant due process of law, citing Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

Appellant argues that the confrontation of "one to three" between a young Negro in handcuffs in police custody with three excited aged victims was unnecessarily suggestive and one person's partial identification could encourage the others' partial identification until all were convinced that this man was the robber.

It should be noted that in Russell v. United States, supra, at 408 F.2d 1. c. 1285, the court stated, "As with the right to counsel, the threshold due process question is not whether the identification was in fact reliable. Stovall v. Denno did not erect a due process barrier against all unreliable identifications; it requires exclusion only of evidence which could and should have been obtained by procedures less conducive to unreliability. Thus, as a general rule, if the confrontation was not improper, the reliability of the resulting

identification is for the jury to decide." See also State v. Hamblin, supra, and State v. Townes, supra, both of which relied on the Russell case and held that absent specific evidence that the confrontation was conducted so as to be unduly suggestive or unfair, prompt on-the-scene confrontations do not entail due process violations and are not prohibited by the Wade or Gilbert cases.

In this case there was no evidence that the confrontation was unduly suggestive or unfair. All three victims identified appellant without undue police suggestion a short time after his arrest and about 30 minutes after the crime was committed. The factual situation presented in this case is analogous to the Russell case where there was a question as to how well the witnesses were able to see defendant, or the Hamblin case where the confrontation was in a hospital where the victim was taken, or in a police station as in the Townes case. All of these cases being situations in which the confrontation was within a short time after the crime was committed and the person apprehended and where these out-of-court confrontations were found admissible. It is concluded that the court did not err in overruling the motion to suppress evidence of in-court and out-of-court identifications and did not err in permitting evidence of the out-of-court identifications and consequently in-court identifications.

Appellant next complains that his motions for directed verdict should have been sustained as there should have been no evidence admitted as to out-of-court identifications or have permitted in-court identifications of appellant and therefore there was no substantial evidence that appellant robbed Harry Hoock. In the light of the findings hereinbefore set out that the evidence of out-of-court identification and in-court identification were admissible, the eyewitness identifications formed the primary evidence of appellant's guilt. The court finds there was substantial evidence presented tending to show commission of

the robbery of Harry Hoock by appellant. The contention is without merit.

 Appellant's next point is that the court erred in refusing to give to the jury Instruction No. B offered by appellant. Instruction No. B was a so-called converse instruction on the issue of whether appellant was the person who robbed Harry Hoock. The instruction reads as follows:

"The court instructs the jury that if, after considering all of the evidence in this case, you do not find and believe beyond a reasonable doubt that Cornelius Dodson is the person who robbed Harry Hoock on November 6, 1970, then you cannot convict the defendant and it is your duty to acquit Cornelius Dodson."

Appellant denied he robbed Harry Hoock or the others and testified also that he was at an address on Carver Lane that morning helping prepare a meal for his brother's children and their aged great-grandparents. Appellant's two defenses were that (1) he was not the person who robbed Harry Hoock and (2) that he was on Carver Lane that morning and not at the scene of the crime.

The state contends that the trial court gave the main verdict-directing instruction with a general converse ending, which read as follows: " . . . and if you do not find each and all of the facts submitted to you for your finding as set forth in this Instruction, then you will find defendant Cornelius Dodson not guilty of Robbery in the First Degree by Means of a Dangerous and Deadly Weapon." That this instruction given by the court covered the same subject matter contained in the converse instruction No. B offered by appellant and therefore it was not prejudicial error to refuse the offered instruction No. B, citing State v. Engberg, Mo., 377 S.W.2d 282, and State v. Sallee, Mo., 436 S.W.2d 246.

State v. Engberg, supra, announces the rule that " * * * a defendant is ordinarily entitled to have given a correct instruction submitting the converse of the state's main instruction; but, if the given instructions fully and fairly cover the same subject matter contained in defendant's converse instruction, it is not prejudicial error to refuse the instruction offered." 377 S.W.2d l. c. 286 [11].

In the case of State v. Fraley, 342 Mo. 442, 116 S.W.2d 17, 20, 21, this court stated, "Defendants in criminal cases, if they so desire, ought in justice have the right to submit their defense to the jury in a direct way by instructions. If the defendant prepares such an instruction, correct in every respect, and asks that it be given, why should it be refused? What legal reason is there to deny him such an instruction? True, if the court of its own motion has given instructions fully covering the same subject matter as contained in the defendant's offered instruction, a refusal to give the offered instruction would not be error. * * * In civil cases defendants have the right to submit their defenses by instructions in a direct way. The rule should not be otherwise where life and liberty are at stake. We therefore rule that in all criminal cases, if a defendant offers a correct instruction as the converse of the State's main instruction, it should be given, unless fully and fairly covered by other instructions. We rule that the practice of concluding the State's main instruction with the following words, ' * * * and unless you so find you will acquit,' or words of like import, is not a sufficient reason for refusing a correct converse instruction offered by the defendant."

This court en banc, State v. Murphy, Mo., 415 S.W.2d 758, 759, 760, approved the statements herein set out in the Engberg and Fraley cases and went on to hold that where defendant presented two defenses, to wit, that she was not the person who committed the crime, and an alibi of showing her presence somewhere else, she had the right to an affirmative and direct submission of her defense of her criminal agency to the jury. The court said that proof of the criminal agency of a defendant is an essential element to his conviction. That an alibi instruction given by

the court did not cover the same subject matter as was contained in the converse instruction offered by defendant. The court concluded that the defendant was entitled to affirmatively converse the element of criminal agency, and as the court failed to give the correct converse instruction offered by defendant such action was prejudicial error requiring the case to be reversed and remanded.

In the case at hand we are not confronted with a situation wherein the defense was solely an attack upon the credibility of the State's case as indicated in the Engberg case. The defendant here got on the stand and denied he was the robber and also accounted for his whereabouts elsewhere. The defense throughout the trial challenged the identity of appellant as the robber. It is thus concluded that appellant herein was entitled to affirmatively converse the element of criminal agency on his part and Instruction No. B offered by the appellant and refused by the court was a correct converse instruction. The failure to give the instruction constitutes prejudicial error requiring that the judgment be reversed and the cause remanded.

Other points briefed relate either to matters which will not likely recur upon another trial or involve criticism of instructions which were in proper form and need not be discussed herein.

The judgment is reversed and the cause remanded for a new trial.

PER CURIAM:

The foregoing opinion by SAMUEL E. SEMPLE, Special Judge, is adopted as the opinion of the Court en Banc.

FINCH, C. J., and MORGAN and BARDGETT, JJ., concur.

DONNELLY, J., concurs in result.

SEILER, J., concurs in separate concurring opinion filed.

HOLMAN, J., dissents in separate dissenting opinion filed.

HENLEY, J., dissents and concurs in separate dissenting opinion of HOLMAN, J.

SEILER, Judge (concurring).

Before voting in this case, I have had the benefit of Judge Holman's dissenting opinion, wherein he distinguishes the reasoning of State v. Murphy (Mo.Sup. banc), 415 S.W.2d 758, saying it would not apply here, because while it is common knowledge that people are present in a large city store each day, it is unlikely that the defendant would just happen to be in the parking lot at the Hoock car at the time of the robbery. Therefore, Judge Holman concludes this is not a case where the jury could have believed that defendant was on the parking lot and nevertheless believed he did not commit the crime, and hence a converse was not required.

In the case at bar there were two defenses: (1) that defendant was not the person who committed the robbery and the witnesses were mistaken in their identification (this defense does not necessarily depend on whether defendant was or was not on the parking lot) and (2) that he was at an address on Carver Lane helping to prepare breakfast and was not at the scene of the crime.

The jury could have disbelieved that defendant was at the Carver Lane address helping prepare breakfast and still have found that defendant did not commit the offense. The jury might have believed he was not on the lot at all, even though not believing he was at the Carver Lane address, and that it was a case of mistaken identity. Or to put it another way, I do not see that the jury would necessarily have to believe that defendant was on the parking lot at the Hoock car, but only by coincidence and as an innocent bystander, in order to acquit under defense (1).

I do not read State v. Murphy, supra, as turning on whether the crime occurred in a crowded or isolated place. As I understand it, it holds that in a case where mis-

taken identity is claimed as well as alibi, defendant is entitled to an affirmative and direct submission of the mistaken identity defense. If so, then it was prejudicial error to refuse to give defendant's offered instruction No. B and I concur with the principal opinion on this point and agree that the cause should be reversed and remanded for that reason.

HOLMAN, Presiding Judge (dissenting).

I respectfully dissent because I do not believe the court erred in refusing Instruction B. As stated in the principal opinion, it is not error to refuse a converse if the given instructions fully and fairly cover the same subject matter.

Portions of State's Instruction No. 1 stated that "you are instructed that if, upon consideration of all the evidence in this case * * * you believe and find from the evidence, beyond a reasonable doubt, that on the 6th day of November 1970, * * * the defendant Cornelius Dodson * * * did rob, steal, take and carry away * * * the property of Harry Hoock * * * by then and there putting the said Harry Hoock in fear of an immediate injury to his person * * * then you will find the defendant Cornelius Dodson guilty of robbery in the first degree by means of a dangerous and deadly weapon; and if you do not find each and all of the facts submitted to you for your finding as set forth in this instruction, then you will find the defendant Cornelius Dodson not guilty of robbery in the first degree by means of a dangerous and deadly weapon."

Refused Instruction B reads as follows: "The court instructs the jury that if, after considering all of the evidence in this case, you do not find and believe beyond a reasonable doubt that Cornelius Dodson is the person who robbed Harry Hoock on November 6, 1970, then you cannot convict the defendant and it is your duty to acquit Cornelius Dodson." It seems to me that Instruction B adds nothing to the subject matter conversed in No. 1. In Instruction No. 2 the court told the jury that "If, upon consideration of all the evidence, you have a reasonable doubt of the defendant's guilt, you should acquit." Also, Instruction No. 3 stated that "the court instructs the jury that if there is any evidence before you that raises in your minds a reasonable doubt as to the presence of the defendant at the time and place where the crime is charged to have been committed, if you find a crime was committed, you will acquit the defendant."

It is my view that the holding in State v. Engberg, Mo.Sup., 377 S.W.2d 282, is sufficient authority for ruling that the court did not err in refusing the converse instruction. When the three instructions quoted above are considered together it would seem that the subject matter in B is fully and fairly covered.

Defendant relies on State v. Murphy, Mo.Sup., 415 S.W.2d 758, and State v. Fraley, 342 Mo. 442, 116 S.W.2d 17, in support of his contention. The case at bar is distinguishable from Fraley because of the difference in the wording of the converse near the end of the main instruction, and because no alibi instruction was given in Fraley; Murphy is distinguishable because of the differences in the factual setting of the two cases. In Murphy, the court said that the alibi instruction did not dispense with the necessity of giving a converse because "the jury could have believed appellant was present in the store, and nevertheless have believed she did not commit the offense." 415 S.W.2d l. c. 760. That reasoning would not apply in the instant case. It is common knowledge that many people are present in a large city store each day, while it is very unlikely that this defendant would just happen to be an innocent bystander at the Hoock car on a parking lot at the time of this robbery.

As indicated, I would affirm the judgment.