STATE of Missouri, Plaintiff-Respondent,

v.

Jesse McDONALD, Defendant-Appellant.

No. 36399.

Missouri Court of Appeals,
St. Louis District,
Division 1.

Aug. 26, 1975.

Charles D. Kitchin, Public Defender, Thomas J. Prebil, Asst. Public Defender, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., John Fred White, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

RENDLEN, Judge.

Defendant brings this appeal from a judgment of conviction by the Circuit Court of the City of St. Louis on the jury's verdict finding him guilty of robbery in the first degree. § 560.120(560.135), RSMo 1969, V.A.M.S. Pursuant the Second Offender's Act defendant was sentenced by the court to twenty years imprisonment, § 556.280. We affirm.

On appeal defendant alleges: (1) the identification testimony of robbery victim Barbara Wade rested on an unnecessarily suggestive pre-trial confrontation, conducive to irreparably mistaken in-court identification; (2) the trial court improperly

asked Barbara Wade leading questions involving the ultimate issues during the hearing on the motion to suppress the identification testimony; and (3) the court erroneously allowed Barbara Wade's in-court identification of defendant. Since the sufficiency of the evidence is not challenged, we recite only those facts pertinent to the issues raised by this appeal.

On December 14, 1973, Barbara Wade was employed as the head cashier at Veteran's Thrift Village, 4200 Natural Bridge in the City of St. Louis. Shortly before seven p. m. she noticed a young man who came into the brightly lit store and while "browsing around" kept watching her. When he left a few minutes later, Ms. Wade summoned employee Rachel Rivers to tend the cash register. Ms. Wade went to the back of the store and informed the manager that she had seen the young man watching her and was afraid of being robbed. Returning to her register, she saw the young man reenter the store a few minutes later and go to Rachel Rivers' checkout lane. When Ms. Rivers left her register to get an item for another customer, he moved over to the lane which Ms. Wade was serving. The defendant had a coat over his hand and apparently something in his hand but Ms. Wade could not see if it was a gun. The defendant acting quite nervously said, "Okay. This is a stick-up," . . . "Give me your money." He kept watching Ms. Wade, the door, and everyone around him and kept telling Ms. Wade to hurry. As she put the money in a sack, the defendant grabbed it from her hand and ran. Understandably, the distraught Ms. Wade began to scream and Rachel Rivers, alerted by the screams, turned in time to see defendant leave the store. The police were summoned and Ms. Wade described the man who had robbed her as short with a lot of hair, a natural; hair on his face, wearing a maroon hat, maroon pants, a brown shirt and a maroon jacket. This description, promptly placed on the police radio, led to defendant's arrest by Patrolman Michael Knoke, about two blocks from Veteran's

Thrift Village. The defendant, wearing a maroon hat, pants and jacket, and a brown shirt, with an afro and a beard, was immediately returned to the scene of the robbery for identification. Patrolman Knoke, keeping the defendant in the police car, went inside and had Ms. Wade repeat the description. She added that the hair on his face had been a "scraggly" beard. He told her they had a "subject" in the car and wished her to "take a look at him." They walked to the parking lot where defendant was seated in a police car and Ms. Wade immediately identified him as the robber. The officers had the defendant get out of the car and put on his hat, whereupon Ms. Wade reaffirmed that he was the man who had robbed her. This identification took place between thirty and forty-five minutes following the robbery. During the course of the robbery, the defendant stood no more than three or four feet in front of Ms. Wade who saw him clearly two or three minutes each time he was in the store. Ms. Rivers was not called upon to identify the defendant following the robbery at the scene; however, she positively identified him at the trial.

Considering defendant's Points I and III, the threshold question is whether the confrontation between Ms. Wade and the defendant in the parking lot of Veteran's Thrift Village was unnecessarily suggestive and conducive to irreparably mistaken identification. If so, unless it had an independent basis, the identification testimony of Ms. Wade should have been suppressed. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972).

In *State v. Hamblin,* 448 S.W.2d 603 (Mo. 1970), a robbery was committed by three undisguised persons at about 8:30 in the morning, in full view of the witness for

several minutes under "circumstances which would have caused her to form an impression of his facial features as well as his other characteristics." (*Id.* 608). After the robbery the witness was taken to the hospital for medical treatment, the defendant was quickly arrested, brought to the hospital and identified as one of the robbers within thirty minutes of the event. "This was not only sound police procedure but it was dictated by common sense. The fact that the patrolman had arrested defendant and his two companions did not necessarily mean they had apprehended the robbers. Apparently they were arrested as the result of a description received by radio. If by coincidence defendant and his companions matched the description but were not the robbers, the real robbers would be effecting their escape, and with the present means of rapid transportation, time was of extreme importance. In addition, prompt verification by the victim of the crime that the person apprehended was the person sought would prevent 'the detention of an innocent suspect,' and the delay resulting from the technical requirements of the Wade case would 'diminish the reliability of any identification obtained.'" (*Id.* 608). Citing *Russell v. United States,* 133 U.S.App.D.C. 77, 81, 408 F.2d 1280, 1284 (1969). The court in *Hamblin* extensively reviewed the controlling cases and concluded that "it appears that prompt confrontations in circumstances like those of this case will if anything promote fairness by assuring reliability . . . this probability, together with the desirability of expeditious release of innocent suspects, prevents substantial countervailing policy considerations which we are reluctant to assume the Supreme Court would reject . . . Based on what we consider to be a common-sense approach, and the impelling interest of the public that the police have an effective means to determine whether they have apprehended the wrong person so that if they have they can devote their efforts to apprehending the real criminal before he can make good his escape, and relying on the authority of the *Bumpus* and *Russell* cases, we conclude that the 'Wade and Gilbert Rules' did not preclude the admission in evidence of the in-court identification by the witness of defendant as the person who robbed and beat her." (*Id.* 610[9]).[1]

In *State v. Townes,* 461 S.W.2d 761, 764[1] (Mo.1970) cert. den. 407 U.S. 909, 92 S.Ct. 2445, 32 L.Ed.2d 683 (1972), the court held that under the rule of *Hamblin* a prompt confrontation in police holdover was not so unduly suggestive as to require suppression of the identification testimony.

Our Supreme Court in *State v. Smith,* 465 S.W.2d 482, 484[1] (Mo.1971), holding admissible an identification made within a few minutes of a robbery by an on-the-scene confrontation stated: "There is no prohibition against a viewing of a suspect alone in what is called a 'one-man' showup when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy . . . there was no 'substantial likelihood of irreparable *misidentification.*' To the contrary, the police action in returning the suspect to the vicinity of the crime for immediate identification in circumstances such as these fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh."

Similarly in *State v. Dodson,* 491 S.W.2d 334, 338[5] (Mo. banc 1973), it was held that the effect of *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), is not

---

1. The cases cited above are: *Commonwealth v. Bumpus,* 354 Mass. 494, 238 N.E.2d 343 (1968) cert. den. 393 U.S. 1034, 89 S.Ct. 651, 21 L.Ed.2d 579 (1969); *Russell v. United States,* 133 U.S.App.D.C. 77, 408 F.2d 1280 (1969); *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

to act as a barrier to unreliable *identification testimony* per se, but rather is to prevent evidence of identifications obtained through unreliable *procedures.* If the procedures used are permissible, the reliability of the identification is a matter for the jury. The court held that "absent specific evidence that the confrontation was conducted so as to be unduly suggestive or unfair, prompt on-the-scene confrontations do not entail due process violations and are not prohibited by the Wade or Gilbert cases," *supra* at 338[5]. *State v. Townes,* 461 S.W.2d 761, 763[1] (Mo.1971); *State v. Maxwell,* 502 S.W.2d 382, 389[5, 6] (Mo.App. 1973). Consistent with these cases, this court in *State v. Hudson,* 508 S.W.2d 707, 710[7] (Mo.App.1974), aptly summarized the factors to be considered as follows:

> "In evaluating the suggestiveness of a particular confrontation and the likelihood of misidentification, we look to factors such as the opportunity of the witness to view the accused at the time of the alleged crime, the accuracy of the witness's prior description of the accused, the certainty of the witness at the confrontation, the length of time between the crime and the confrontation, and the need for police to determine at the earliest opportunity whether the person suspected is in fact the person sought." *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Stovall v. Denno, supra* 388 U.S., l.c. 302, 87 S.Ct. 1967; *State v. Townes,* 461 S.W.2d 761, 763[1] (Mo.1970), cert. denied 407 U.S. 909, 92 S.Ct. 2445, 32 L.Ed.2d 683 (1972).

In the case at bar nothing suggests confrontation was conducted in an unduly suggestive manner. Defendant was returned to the scene as soon as arrested and promptly identified by the victim. While this confrontation took place within thirty to forty-five minutes and the cited cases involved confrontation within thirty minutes, we do not believe that the additional time lapse renders the procedure impermissibly suggestive or unfair.

Having found the confrontation proper, we need inquire no further. However, even if that procedure had been improperly conducted, the witness' opportunity to observe the defendant for several minutes before and during the robbery in the brightly lit interior of the store, provided more than sufficient independent basis to support the admission of her in-court identification. *State v. Davis,* 507 S.W.2d 32, 34[1] (Mo. App.1974). *State v. Ross,* 502 S.W.2d 241, 245[1] (Mo.1973).

Since there was no error in admitting the identification testimony at trial, appellant's Points I and III are denied.

██ Finally, defendant complains of questions propounded by the court to witness Wade during the hearing on the motion to suppress her in-court identification as leading and calling for conclusions. These contentions are without merit. As previously discussed, the evidence at the hearing not only showed a sufficient independent basis for the witness' identification but also a reliable and not "unduly suggestive" confrontation at the scene of the crime. We have found these facts provided an adequate basis for admission of the in-court identification. The complained of questions which if leading, and this does not so appear, provided nothing more than cumulative evidence; they had no effect on the admissibility of the evidence sought to be suppressed and could not constitute error.

Judgment affirmed.

WEIER, P. J., and DOWD, J., concur.