**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Daniel WILLIAMS, Defendant-Appellant.**

**No. 38864.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

May 16, 1978.

---

James M. Smith, Asst. Public Defender, 22nd Judicial Circuit, St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Carson W. Elliff, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GUNN, Presiding Judge.

Defendant appeals from his conviction of first degree murder, first degree robbery, assault with intent to kill with malice and striking a police officer. On appeal, defendant raises four points of alleged trial error: (1) that a warrantless search of a bus station locker and seizure of the fruits of the robbery found therein was a violation of his Fourth Amendment rights; (2) that his statements admitting the commission of the murder and robbery should have been suppressed as being involuntary and made without an intelligent waiver of his Fifth Amendment rights; (3) that exclusion of a defense witness' proffered testimony relating to defendant's incoherent condition three days after the crime was improper because it was relevant to the voluntariness of his confessions; (4) that the identification procedures tying defendant to the crimes were faulty. We find no reversible error and affirm the judgment.

Carleton Curry was the State's key witness linking defendant to the crime. Mr. Curry testified that just prior to entering the Seventh Street Lounge in St. Louis he heard shots from within. Curry observed defendant emerging from the tavern carrying a green money bag and viewed his face in daylight for about a minute at a distance of 8–10 feet. When Curry made inquiry of defendant as to what was happening, defendant opened fire on him. Curry fled and called the police giving the defendant's description as being stocky, about 6′4″ tall and wearing a polka dot coat and dark hat. Police responding to Curry's call found the husband of the owner of the Seventh Street Lounge lying in the tavern, mortally wounded from a .22 caliber gunshot to the head.

Shortly thereafter, Curry was summoned to the Greyhound Bus Station by police. The police told him they "had a guy" who fit the description given to them by Curry. At the bus station Curry unhesitatingly identified defendant as the assailant and the person he had seen emerging from the tavern. He also gave in-court identification of defendant at trial.

A limited initial personal search of defendant at the bus station revealed a .22 caliber pistol with five spent cartridges, another gun without a cylinder and a wad of currency. Defendant was conveyed to the police station, and another search disclosed a lady's gold watch and a bus station locker key. The victim's ring and watch were also found in defendant's possession.

At the police station, defendant became bellicose and kicked a police officer. He was forcefully subdued by a single night stick blow to the head. While handcuffed and being taken to the hospital by police for examination as to the extent of injury from the blow, defendant made an escape attempt and fell down some stairs, sustaining several cuts on his head. Although defendant never lost consciousness, he was rendered groggy by the fall. At the hospital, defendant's head wounds were sutured, and while in custody, he gave four statements to police: two at the hospital emergency room; one at the police station on his return from the hospital; one the following morning, also at the police station. Each of the statements was given after the defendant was fully informed of his rights. Each statement was consistent with the other and completely incriminating, in that defendant stated that he had gone to the victim's tavern intending to rob it; that he had scuffled with the victim, taken his watch and shot him several times.

About two hours after defendant's arrest, police, without a search warrant, took the bus station locker key which had been found on defendant and opened the locker. The locker contained a green money bag described as the kind which had been taken from the Seventh Street Lounge and containing several rolls of coins. A bottle of whiskey of the kind sold in the tavern was also found in the locker.

Defendant's counsel strongly objected to the introduction into evidence of the contents of the locker, particularly the green money bag, claiming a violation of defendant's Fourth Amendment rights. The basis of the objection was that no warrant had been obtained to search the locker

and that the warrantless search was not within any of the recognized exceptions by which such a search could be made. We find that we need not discuss the merits of the legality of the search, for we hold that defendant waived his objection to the admission of fruits of the search by failing to object to the admission of photographs depicting the items seized. The actual receipt of the green money bag into evidence was merely duplicative of what already had been submitted to the jury without objection. During the course of the State's case, a series of color photographs was received into evidence without objection which showed the locker, its contents—including the money bag—rolls of coins and a bottle of whiskey. The photographs clearly and in full detail showed a green money bag of the exact kind taken from the Seventh Street Lounge. Also, rolls of coins which had been taken from the green money bag were apparent in the photographs, even to the extent of their denominations. The photographs, admitted without objection, depicted all items removed from the locker. The green money bag to which defendant did offer objection at trial was clearly shown, and the jury could make no mistake as to its identification. Inasmuch as the jury had for its unobjected viewing the photograph of the green money bag as it lay in the locker, defendant's objection to the introduction of the bag into evidence was completely devitalized. Defendant cannot complain of the receipt of evidence where evidence of the same tenor—in this case, the same evidence (a green bag)—has been admitted without objection. *State v. Eiland,* 534 S.W.2d 814 (Mo.App.1976); *State v. Patterson,* 516 S.W.2d 571 (Mo.App.1974). See also *State v. Simone,* 416 S.W.2d 96, 100 (Mo.1967).[1]

Defendant next contends that the inculpatory statements he made to police were involuntary and that there was no intelligent waiver of his right to remain silent. Defendant argues that the state-

ments were made from fear of police brutality and that his injuries resulting from his escape attempt left him mentally torpid and unable to intelligently waive his rights. There was ample evidence at trial to refute defendant's contentions in this regard. Hence, we are brought within the prevailing rule that on a hearing or motion to suppress statements, where the testimony conflicts as to the voluntariness of the statement, admission of the confessions by the trial court is a matter of discretion. *State v. Carroll,* 562 S.W.2d 772 (Mo.App. 1978); *State v. Blankenship,* 526 S.W.2d 78 (Mo.App.1975); *State v. Garrett,* 510 S.W.2d 853 (Mo.App.1974). Without detailing the evidence, we find that the trial court had the benefit of considering all of the relevant testimony in the pretrial suppression hearing to establish that defendant's statements regarding the perpetration of the crime were voluntary and intelligently made after having been given full and proper advice as to his Fifth Amendment rights. The mere fact that the defendant had been injured prior to his statement does not proscribe the use of such statements. *State v. Ambus,* 522 S.W.2d 306 (Mo.App. 1975); *State v. Thomas,* 522 S.W.2d 74 (Mo. App.1975). Further, the fact that a lawyer was not present at the time the statements were given does not render them inadmissible. *State v. Hunter,* 456 S.W.2d 314 (Mo. 1970). We find no abuse of the trial court's discretion in admitting defendant's statements.

Three days after the first three statements had been made and two days after the final statement was made, defendant was interviewed by his court appointed attorney. The attorney considered defendant to be incoherent at the time of the interview. The trial court refused to permit the defendant's attorney to testify regarding the state of defendant's mind on the ground that such testimony would not be relevant to defendant's condition at the time the statements were made. As stated

---

1. Also, in his direct testimony, defendant disavowed any association with the locker and apparently lost standing to object to a lack of search warrant regarding the search of the locker. *State v. Dodson,* 556 S.W.2d 938 (Mo. App.1977).

in *State v. Proctor*, 546 S.W.2d 544, 545 (Mo.App.1977), "[t]he determination of the materiality of evidence is a matter within the discretion of the trial judge. (cite omitted). Evidence is relevant if it tends to prove or disprove a fact in issue or corroborates relevant evidence bearing on the principal issue. (cite omitted). It is settled that doubts as to the relevancy of evidence should be resolved in favor of the admissibility of the evidence." Defendant asserts that if he was incoherent three days after his statements to police, that it is logical to assume that he was incoherent at the time the statements were made. In this case, such reasoning is a non sequitur. There is nothing in the record to support defendant's argument. By his own testimony, defendant established that following his return to the police station from the hospital after the statements had been made, he was in full possession of his thought processes and faculties even to the point of being able to give a vivid description of the events which occurred. Defendant's chief complaint was that for the three intervening days between his return to the hospital and his meeting with his attorney he had no sleep. Thus, we believe it would be too speculative to infer that even if defendant was incoherent at the time of his interview with his attorney, that it was a product of the injury suffered three days previously or that any such incoherence stemmed from his injury. Defendant's own testimony negates such a conclusion. The better practice would have been to admit the attorney's testimony, but we find no abuse of the trial court's discretion in rejecting the testimony of defendant's counsel in this instance, as the counsel confessed complete lack of knowledge of defendant's mental capacity at the time the statements were given.

Finally, defendant contends that it was error to have admitted witness Curry's in-court identification of defendant. In support of this contention defendant argues that Curry misdescribed the color of defendant's coat and that police unduly suggested to Curry that defendant was the guilty party by telling him that they "had a guy" who matched the description given to them. Defendant's arguments are devoid of merit. We first note that defendant, who is 6'4" in height and 240 pounds in weight, was scarcely nondescript. But aside from that fact, Curry had a clear and unobstructed view of defendant in daylight for a full minute; he even spoke to him. He saw his face full front even while defendant was shooting at him. There was thus ample independent source for Curry's in-court identification of defendant apart from the allegedly tainted show-up. *State v. Radford*, 559 S.W.2d 751 (Mo.App.1977). We are not impressed by the fact that police told Curry that they "had a guy" who matched the description given to police. *State v. McDonald*, 527 S.W.2d 46 (Mo.App. 1975), is directly on point in this regard. In *McDonald*, police statements to a witness that they had " 'a subject' in the car and wished her to 'take a look at him' " were held not to be unduly suggestive. Further, Curry's identification of defendant on seeing him outside the bus station as he alighted from his automobile was unhesitating and unequivocal. Neither are we concerned about Curry's misdescription of defendant's coat as polka dot when it was actually a tweed. Such inconsistency is a matter for the jury to consider and resolve. *State v. Bady*, 561 S.W.2d 748 (Mo.App.1978); *State v. Radford*, supra.

The judgment is affirmed.

WEIER and KELLY, JJ., concur.